No. 31,695

FIRST NATIONAL BANK IN WICHITA, Administrator of the Estate of Wallace T. Rouse, Deceased, *Appellee*, v. THE PARAMOUNT TRANSIT COMPANY, *Appellee*, THE PRAIRIE STATE BANK OF AUGUSTA, Intervener, *Appellant*, et al.

(33 P. 2d 300.)

Opinion filed June 9, 1934.

*Burt Comer*, of Wichita, and *Paul MacCaskill*, of Eureka, for the appellant.

*J. D. Fair,* of Wichita, for the receiver; *Lloyd Cooper,* of Wichita, for intervener, the Cooper Motor Company; *Harold H. Malone,* of Wichita, for the Martin-Jackson Tire Company.

The opinion of the court was delivered by

THIELE, J.: This is an appeal involving the construction and validity of a chattel mortgage.

Under date of September 5, 1931, the Paramount Transit Company of Wichita executed and delivered to the Prairie State Bank of Augusta its chattel mortgage to secure payment of a note for $7,048.52. The mortgage was on a form printed for the use of the bank and obviously was intended for general use locally, for it makes provisions for live-stock loans, for shipment of cattle, removal from Butler county, etc. The mortgage blank was filled in with typewriter and shows the property was located and kept at Wichita, in Sedgwick county, and on the face of the mortgage it is described as—

"All property as set forth in exhibit A attached hereto and made a part hereof as if fully rewritten herein."

In another place this property is represented to be free and clear of encumbrance "except mortgages and indebtedness referred to in exhibit A." Exhibit A contains a list of forty-eight specific items, at the head of the list being this statement:

"All property of the Paramount Transit Company of whatsoever kind including the following:"

The first twenty items are trucks, truck bodies and trailers. The remaining twenty-eight items are office equipment, automobile equipment, etc., the list concluding with the statement:

"Free and clear of all encumbrances except chattel mortgages and indebtedness, if any, now of record. All property listed above in numbers 20 to 48, inclusive, free and clear from all encumbrances."

From a rather sketchy abstract we gather the following: Sometime later Wallace T. Rouse filed an action for money against the transit company and asked for the appointment of a receiver, and a receiver was appointed.

On March 7, 1932, the appellant bank filed its intervening petition, to which was attached a copy of the above chattel mortgage, and on the same day it filed its application alleging that the receiver had in his possession the property set out in an exhibit attached to said application; the execution of the chattel mortgage was alleged;

that the entire sum secured was unpaid; that the security was inadequate to pay the amount due, and asking that the receiver deliver to it the above-described property.

On March 8, 1932, the trial court made its order finding the chattel mortgage to have been made and filed and that the personal property described in said exhibit was probably insufficient to pay the amount due to appellant bank; that the receiver consents thereto, and orders that the receiver deliver the property to the plaintiff bank. The designated property was all that included in numbers 20 to 48, inclusive, on the chattel mortgage.

Although not clearly shown by the abstract, on March 10, 1932, the receiver also delivered one Dodge truck to the appellant bank. Thereafter the appellant filed an amended intervening petition alleging that it had sold the assets delivered to it for $400, and setting up a balance due, and alleging further that after the appointment of the receiver certain property belonging to the appellant was sold by the receiver, and certain notes and amounts belonging to appellant were collected, all of which was property mortgaged to appellant and on which it had a first lien; that the receiver had said receipts in his hands and should be ordered to pay to appellant the balance due it, and it prayed for judgment accordingly.

The receiver objected to the allowance of appellant's claim, and on hearing it was stipulated that the matter be presented on three grounds:

1. Whether or not the mortgage is ambiguous with reference to property described.

2. If not ambiguous, is the language confined to the specific enumeration set out or is it broad enough to include properties other than enumerated?

3. Whether or not it is a valid mortgage under the statute providing how corporations may mortgage or pledge property.

The principal question seems to have been whether the certificate of convenience issued to the company was included in the mortgaged property. On May 8, 1933, the court made the following finding:

"The court is of the opinion that under the broad powers of the directors of a corporation, they were authorized to execute the mortgage involved in this controversy. The court further finds that the description contained in the mortgage does not include the certificate of convenience."

Thereafter appellant asked leave to file a second amended intervening petition to show the facts and circumstances leading up to

the execution of its chattel mortgage and to offer evidence thereon, which the court denied. Thereafter the court found that the directors of the transit company were authorized to execute the chattel mortgage, and that the mortgage was not ambiguous and did not include the certificate of convenience. Appellant's motion for a new trial was denied.

Since this appeal was taken and after appellant's abstract was filed, the trial court, by a *nunc pro tunc* order, corrected the above-quoted finding to read:

"The court is of the opinion that the description contained in the mortgage does not include the certificate of convenience, and the execution of the mortgage as so construed was within the broad powers of the directors without authorization or approval by the stockholders."

The original judgment was not otherwise changed. Appellant appeals, contending that the court erred in concluding that the description in its mortgage did not include the certificates of convenience, in not permitting it to file a second amended intervening petition, and in rendering judgment after death of plaintiff and before a revivor was had, and in overruling its motion for a new trial.

As to the revivor, the court was informed on June 7, 1933, by appellant's counsel, that the plaintiff had died November 26, 1932, and at the same time appellant asked permission to file amended pleadings. The court then suggested that an application to revive be made promptly, and the order of revivor was made August 28, 1933. The motion for a new trial is not abstracted. So far as the record shows, this particular complaint was not urged to the trial court. In any event, we are not persuaded that it affected appellant's rights in any manner. Without discussing the effect on the action of plaintiff's death, in the interval between his death and the revivor of the action the court was not without jurisdiction over the receiver and the property in his control, and it has been made clear that appellant's controversy is with the receiver rather than the plaintiff.

Two main questions are presented: Did the chattel mortgage description include the certificates of convenience and other property of the transit company not specifically enumerated, and if it be held that it did, was the chattel mortgage valid?

The last question will be first considered. Assuming that the chattel mortgage covered all of the personal property of every kind and character of the transit company, as appellant contends, was

the execution and delivery of it a valid exercise of the transit company's corporate power? While not specifically stated, it seems to be conceded that the transit company had no real estate, and that if the chattel mortgage be construed according to appellant's contention, it covered everything the company owned. Under R. S. 17-610, a corporation had power to borrow money on the credit of the corporation not exceeding its authorized capital stock, and to pledge the property and income of the corporation, it being provided that the section should not apply to debentures secured by real estate or other securities, and under R. S. 17-620, a corporation had power to convey lands. Both sections were affected by acts passed in 1931. By Laws 1931, chapter 138 (R. S. 1933 Supp. 17-610), approved March 16, 1931, effective on publication in the statute book (May 28, 1931), R. S. 17-610 was amended to read:

"Corporations shall have power to borrow money on the credit of the corporation, and may execute bonds or promissory notes therefor, and may pledge the property and income of the corporation."

At the same session of the legislature, Laws 1931, chapter 154 (R. S. 1933 Supp., 17-620a), approved February 25, 1931, effective on publication in the official state paper and published February 26, 1931, was enacted. It reads:

"That any corporation now or hereafter incorporated under the laws of Kansas shall have the additional right and power to make disposition of all or substantially all of its property, assets and good will, or good will, by sale, lease, exchange or otherwise, to such person or corporation on such terms and conditions and for such considerations as its board of directors may determine, when and as authorized or approved by the vote of the holders of not less than four-fifths in amount of its outstanding shares of capital stock entitled to vote, at a meeting duly called for the purpose in accordance with the by-laws, or, in the absence of such provision in the by-laws, then upon not less than ten days' written notice."

Both of these acts were enacted and effective some months prior to the date of the mortgage in question. Appellee argues that under the last-mentioned act, if appellant's contention as to property covered by the chattel mortgage is correct, the chattel mortgage was invalid, while appellant contends that the act by its own terms creates "an additional right and power" and does not affect the validity of the chattel mortgage. We cannot agree with appellant's contention. Notwithstanding the use of the expression "an additional right and power," the mere enactment put a restriction on a corporation's "disposition of all or substantially all of its prop-

erty, assets and good will, or good will, by sale, lease, exchange or otherwise," except upon compliance with the statute. Prior to the enactment there was no specific provision for leasing or exchanging property, and to this extent it may be said the act created an "additional right and power." Likewise there was no specific grant of power to dispose of all or substantially all of the assets; such disposal could only be made by consent of all stockholders; to permit such disposal by a portion only may be said to be an additional right to and power in the corporation. Prior to the passage of the act corporations could borrow money and pledge assets as limited by R. S. 17-610, and they had, as they still have, the right to convey real estate, but the enactment changed the amount which could be borrowed and the assets which could be pledged, as well as the quantity of real estate which could be sold, if the effect was to dispose of all or substantially all of the property, assets, etc. The fact that R. S. 17-610 was amended after R. S. 1933 Supp. 17-620a was enacted does not lead to any different conclusion, for, having restricted the disposition of property to stockholder approval, the necessity or advisability of limiting a loan thereon and a pledge thereof had, to a considerable extent, disappeared. The statute uses the words "to make disposition . . . by sale, lease, exchange or otherwise." While many citations might be given holding that "to make disposition," "to make disposal," "to dispose of" and the like, contemplate and mean an out-and-out sale and a complete alienation, here the language must either be so construed that the words "or otherwise" are redundant and mean nothing is added to "sale, lease, exchange," or they must be given force and effect so as to contemplate some other or further disposition. In *Platt v. Union Pacific R. R. Co.*, 99 U. S. 48, 25 L. Ed. 425, where the act of congress incorporating the company and providing that certain lands "not sold or disposed of" should be subject to preëmption and settlement, it was held that the words "or disposed of" were not redundant or synonymous with the word "sold," but that they contemplated a use of the lands granted different from a sale, and that a mortgage was such a use.

In our opinion the statute contemplates and includes disposition by chattel mortgage, and is applicable where all or substantially all of the corporate assets are to be mortgaged.

In view of our conclusion, there is no need to discuss the question

whether the description in the chattel mortgage covered personal property other than that specifically enumerated.

The appellant desired permission to file a second amended intervening petition to show the circumstances under which the chattel mortgage was executed and delivered, and the trial court's refusal is complained of. The amended intervening cross petition, on which the action was tried, alleged that the chattel mortgage was "duly made, executed and delivered," and this was a sufficient allegation to permit proof that the stockholders had approved the making of it, if that had been the case. However, it is not claimed by appellant that the proposition was ever submitted to the stockholders; on the contrary, in a reply brief appellants state that although the abstracts do not show it, it was admitted at the trial a certain resolution of the board of directors of the transit company was passed authorizing the board of directors to borrow from the appellant bank "executing as security for said note a chattel mortgage covering all of the property of the corporation," etc. To have shown in detail how this resolution was passed would have made no difference, there being no claim the stockholders had acted. The court's refusal to permit further amendment of the intervening petition was not error.

The appellee did not and does not complain of the trial court's ordering the receiver to deliver certain of the mortgaged property to appellant, which was done before the claim was made that the chattel mortgage covered other than the specifically enumerated articles, and that matter is not before us.

The judgment of the trial court is affirmed.