No. 32,321

Stanolind Pipe Line Company, *Appellee*, v. W. C. Ellis et al., *Appellants.*

(45 P. 2d 846)

Opinion filed June 8, 1935.

*L. H. Menger, George K. Melvin* and *R. E. Melvin,* all of Lawrence, for the appellants.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling* and *Henry V. Gott,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was a quiet-title action, and the appeal involves the interpretation of a will.

There is no dispute as to the facts. Jared Browning in his lifetime owned the real estate involved. He died many years ago, leaving a will which was duly admitted to probate and which provided:

"I give to my wife, Emily Browning, all my property, real and personal, to have and to hold as her own, with full power to use, lease, sell or make any other disposition of, that she may desire requiring of her only that she as soon as possible pay all my debts and that she train and educate my children in a proper manner.

"*Second.* If at the death of my said wife there should remain any of this property or the proceeds of this property, I hereby give to each one of my

children, viz.: Esther B. Browning, Evaline Browning and Mary Ann Browning· to each one two ninths (2/9) of such remaining property and to each one of my wife's children by a former marriage, viz.: Minnie A. Fix, Ida May Fix and Emily Fultz (formerly Emily Fix) to each one ninth (1/9) of such remaining property."

On August 2, 1923, Emily Browning, for a stated consideration of $43.25, granted to Sinclair Pipe Line Company the right to lay, maintain, etc., a pipe line for oil or gas, with appropriate equipment for telegraph and telephone lines, over the real estate in question, with right of ingress and egress for such purposes, and providing for an additional like compensation if a second pipe line be installed alongside the first one. The grantor reserved the right to use the land for any and all purposes except those granted the grantee. There were other provisions which we need not notice. The concluding part reads:

"That the terms, conditions and provisions of this contract shall extend to and be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto."

Under date of October 8, Emily Browning, for a stated consideration of $40, made a further grant of right to construct, etc., a gate box, apparatus and equipment, on a described tract 60 feet square, to be used in connection with the pipe line. There was similar provision as to being binding upon heirs, etc.

Both of the above grants were duly acknowledged before a notary public and were recorded in the office of the register of deeds. Shortly after the grants were made the grantee entered upon the real estate and laid a ten-inch pipe line and constructed the gate box and has ever since maintained them. If there was any uncertainty as to where the pipe line should be laid it was made certain by the laying thereof. About the same time the corporate name of the grantee was changed, and by subsequent action it was again changed to Stanolind Pipe Line Company. About April, 1931, Emily Browning died, and no disposition of the lands having been made, otherwise than as mentioned, an action in partition was brought to divide the real estate among the above-named children or their successors in interest and to quiet the title against certain defendants who were not entitled to participate in the partition of the lands or proceeds of sale thereof. The pipe-line company was not a party to the action. A sale of the real estate was decreed, and at such sale, in May, 1933, the defendant W. C. Ellis was the purchaser. Thereafter a question arose as to the rights of plaintiff

under the above-mentioned grants, and on August 11, 1933, plaintiff filed an action to quiet its title thereunder. At the trial plaintiff's counsel stated it was stipulated that plaintiff claimed only whatever right, title or interest it obtained by reason of the execution of the pipe-line right of way and gate-box contract, and disclaimed any other interest in the land or in the fee, and defendant's counsel then stated: "Leaving only the question in the case for the interpretation of the will—terms of the will—by the court as a matter of law, construction of the terms of the will of Jared Browning" and stating the court could consider the proceedings in the partition suit, and the probate proceedings in the estates of Jared Browning and Emily Browning. Copies of the Jared Browning will, of the Emily Browning grants and of the journal entries in the partition suit were attached to the pleadings. No other evidence was offered. The trial court, after consideration, found generally in favor of the plaintiff and against the defendants, and rendered judgment accordingly. Defendants appeal.

It is contended that any person holding less than the fee-simple estate cannot create an easement beyond the term of his estate (9 R. C. L. 747), and that therefore Emily Browning's grant ceased at her death, she having only a life estate in the property. In support *Davis v. Davis*, 121 Kan. 312, 246 Pac. 982, is cited. It was there said that a tenant in tail has a right to lease the entailed property for oil and gas for any term within her own tenure. That, however, is not conclusive here for, as was said in *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463:

"An oil and gas lease is not a lease in the ordinary sense, and conveys no interest in the land, but is merely a license to explore." (Syl. ¶ 1.)

And cases in support are cited. It was likewise there held that an oil and gas lease is personal property. The nature of the grants here involved will be discussed later.

Were we to follow the old rule that devise of the fee may not be impaired by a subsequent contradictory provision (*McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965), we should say that Emily Browning took the fee. The rule in the McNutt case has been qualified, however, by the modern rule that the intention of the testator, as gathered from all parts of the will, must control (*Scott v. Gillespie*, 103 Kan. 745, 176 Pac. 132). Giving the will an interpretation most favorable to appellant, it would follow, under *Greenwalt v. Keller*, 75 Kan. 578, 90 Pac. 233; *Postlethwaite v. Edson*, 98 Kan. 444, 155

Pac. 802; *Scott v. Gillespie*, supra; *Otis v. Otis*, 104 Kan. 88, 177 Pac. 520; *Markham v. Waterman*, 105 Kan. 93, 181 Pac. 621; *Mansfield v. Crane*, 116 Kan. 2, 225 Pac. 1087; *Wilkison v. Wilkison*, 130 Kan. 424, 286 Pac. 252, and other cases, that Emily Browning was given a life estate with a power of disposal. (Compare, however, *Donohue v. Skinner*, 118 Kan. 215, 234 Pac. 1000, and *Quinton v. Kendall*, 122 Kan. 814, 253 Pac. 600.) And assuming that such is the effect of Jared Browning's will, let us examine the extent of her power, which was to "use, lease, *sell or make any other disposition of.*" (Italics ours.)

Although the stipulation would seem to conclude any question about the nature of the grants by Emily Browning to plaintiff, it is also argued that the grants are mere licenses and cannot ripen into easements, and that no period of termination being fixed, they terminated at the death of the grantor. Neither contention is good.

The difference between a license and an easement is thus defined in 9 R. C. L. 744:

"The difference between an easement and a license is that the former implies an interest in land, while the latter does not. An easement must be created by deed or prescription, while a license may be by parol. The former is a permanent interest in the realty, while the latter is a personal privilege to do some act or series of acts upon the land of another without possessing any estate therein, and is generally revocable at the will of the owner of the land in which it is to be enjoyed, by the death of the licensor, or by his conveyance of the lands to another, or by whatever would deprive him of doing the acts in question or giving permission to others to do them."

In 2 Tiffany on Real Property (2d ed.) 1202 is the following:

"In so far as an easement involves, as it ordinarily does, the privilege of doing or not doing a certain class of act on or in connection with another's land, there is a superficial resemblance between an easement and the privilege created by a license. The distinction between such an easement and a license privilege lies primarily in the fact that the licensee has a privilege and nothing more, while the holder of an easement has not only a privilege but also rights against the members of the community in general, including the owner of the land, that they refrain from interference with the exercise or enjoyment of the privilege."

It could hardly be claimed that Mrs. Browning in her lifetime could have revoked the grantee's rights under the grants, or that thereunder any one other than the grantee could have laid pipe lines, or that any other person could have interfered with the grantee's pipe lines. With respect to railroad right of way, in 22 R. C. L. 852, it is said:

"Land for a railroad right of way may be acquired by a conveyance from the owner as well as by compulsory proceedings, and an agreement with a railroad company for the conveyance of a right of way stands on the same footing as any other contract for the conveyance of land."

In such view of the law it appears the grants are sufficient to confer a right to lay and maintain the pipe line and construct and maintain the gate box, etc., so long as there is no abandonment. It would appear that in certain instances the failure to use words of inheritance might shorten the grant to a life estate, although that is not universally true (34 A. L. R. 695, Anno.), but in the case before us there is express inclusion of such words. In a somewhat analogous case this court held, in *Ranney v. Childs*, 96 Kan. 483, 152 Pac. 621:

"A contract expressly made binding upon the heirs and assigns of the parties, by which one of two adjoining owners granted the other a right to the use in common of a stairway, held to run with the land." (Syl.)

It was not necessary that the grant be for a definite number of years; in fact, it would be unusual for a railroad company, pipe-line company or any public utility to take a grant for a stated period in view of our statutes permitting them to extend their corporate existence. To a large extent their activities are carried on through construction of their distribution systems on lands in which they have easements and not mere licenses. As is said in Washburn's Easements and Servitudes (4th ed.) 679:

"A right granted by charter to a gas company to lay gas pipes in the streets of a city is an easement, and not a mere license."

If it be assumed that only licenses were granted, we must still take note of the fact that for a valuable consideration the grantee laid its lines and made its improvements. Even had this been done under an oral arrangement, it would not have been revocable at the pleasure of Mrs. Browning or the holders of the remainders. As was said in *Kastner v. Benz*, 67 Kan. 486, 73 Pac. 67:

"An oral license to the owner of a two-story building permitting access to his second story by a stairway of an adjoining owner and through a party wall, which was given for a valuable consideration and in reliance upon which the licensee has expended money or labor in altering his own premises to conform to this arrangement, is not revocable." (Syl.)

We take notice of the fact that this pipe line did not run alone through the Browning lands, but extended between widely separated termini. See, also, *Smyre v. Kiowa County*, 89 Kan. 664, 132 Pac.

209, where it is held that when a license has been so far executed it would be a fraud on the rights of the licensee to permit revocation, an equitable right arises capable of being transferred to third persons and binding on the licensor and those claiming under him with notice.

To revert to Emily Browning's power and her exercise thereof, it could be said that Emily Browning sold an interest in the land. The fact it was less than the whole ·fee makes no difference—she could have sold outright any portion of the whole real estate or an undivided interest in all of it. Neither can we ignore her power to make other disposition. Such words were neither redundant nor meaningless (*First National Bank v. Paramount Transit Co.*, 139 Kan. 808, 33 P. 2d 300). If it be said her power to sell contemplated a sale of the entire fee in the whole of Jared Browning's real estate, we have yet to consider what other disposition she could make, and are of opinion that under this power she was authorized to grant the easements complained of.

Certain other contentions of the appellants need not be separately mentioned. An examination of the record shows the judgment of the trial court was correct, and it is affirmed.