217 F.2d 636
 UNITED STATES of America, Appellant,
v.
BELLE VIEW APARTMENTS, SEC. I, Inc., Belle View Apartments,
Sec. II, Inc., Belle View Apartments, Sec. III,
Inc., Belle View Apartments, Sec. IV,
Inc., Belle View Shopping
Center, Inc., Appellees.
 No. 6851.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 16, 1954.
Decided Dec. 9, 1954.
 
 John C. Harrington, Atty., Dept. of Justice, Washington, D.C. (Perry W. Morton, Asst. Atty. Gen., Lester S. Parsons, Jr., U.S. Atty., Norfolk, Va., and John F. Cotter, Atty., Dept. of Justice, Washington, D.C., on brief), for appellant.
 Albert V. Bryan, Jr., Alexandria, Va., for appellees.
 Before PARKER, Chief Judge, and SOPER and DOBLE, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 United States of America instituted this action to enjoin certain corporations known as Belle View Apartments, Sec. 1, Inc., et al., from trespassing on the right of way of the Mount Vernon Memorial Highway by constructing an access road from their adjacent property over a park area in the right of way to the paved portion of the highway. Right of access to the highway was asserted by the Belle View Companies by virtue of a reservation in a deed dated February 11, 1930, whereby their predecessors in title had conveyed the land in question to the United States. On the other hand the government contended that this reserved easement was extinguished by a subsequent condemnation proceeding in 1933, or in the alternative that it had been acquired by the United States by adverse possession. The District Court held that the appellees still owned the right of access, in that it had neither been extinguished in the condemnation proceedings, nor lost through adverse possession.
 
 
 2
 On February 11, 1930 Jameson and Anita B. Cotting, Belle View's predecessors in title, conveyed to the United States by a deed of donation a tract of land in Fairfax County, Virginia, containing approximately 12.658 acres. The land conveyed was a strip 200 feet in width which bisected the land of the grantors. It was acquired by the United States for use as a part of the Mount Vernon Memorial Highway which was then being planned and constructed by the Bureau of Public Roads, a part of the Department of Agriculture. The deed contained the following reservation by the grantors:
 
 
 3
 'The parties of the first part reserve unto themselves, their heirs, and assigns the right of ingress and egress to and from said memorial highway, for which necessary entrance or exit roads on both sides of and within the limits of the right of way of said highway across the premises of the parties of the first part shall be constructed by and at the expense of the party of the second part at any time upon request to party of the second part by parties of the first part submitted in writing within one year after completion of the highway, the time of such completion to be fixed by receipt of a written notice by the parties of the first part from the party of the second part.'
 
 
 4
 Two years later the government decided that for the purpose of improving the Memorial Highway it was desirable to acquire additional lands which the Cottings owned lying on both sides of the Highway and containing approximately 182 acres; and condemnation proceedings were therefore instituted. The government proceeded by condemnation because the title examiners were apprehensive of a defect in the chain of title by which the Cottings had obtained the original tract, which included the 12.65 acres previously donated by the Cottings to the United States by the deed of February 11, 1930; and accordingly the condemnation covered both the supplemental acreage and the 12.65 acre tract.
 
 
 5
 The petition of condemnation stated that the land was acquired by the United States for the purpose of constructing and maintaining, including parking, the Memorial Highway; and that for this purpose the United States desired to acquire the fee simple title, together with all riparian rights thereunto appertaining, to a plot of 194.79 acres which included the area of 12.65 acres above mentioned. While the proceeding was pending the United States and the Cottings agreed that the sum of $16,223.46 was just compensation for the property being condemned; and accordingly the Commissioners made an award of that amount which was approved by the court. Subsequently the court entered judgment thereon vesting title to the lands described in the petition for condemnation in the United States, in fee simple absolutely and forever.
 
 
 6
 There remained in the hands of the Cottings an additional area approximating 104.5 acres in extent lying to the west of the Memorial Highway to which the defendants in the present action subsequently acquired title through certain mesne conveyances. These conveyances did not make specific reference to the right of access to the Memorial Highway which the Cottings had retained in their deed of February 11, 1930, but the effect of the conveyances was to vest in the defendants whatever right the Cottings retained to this reservation after the conveyances and condemnation proceedings above mentioned. In 1953 the defendants were engaged in the construction of an apartment house and a shopping center on these lands, and on July 22, 1953 they informed the National Park Service that they would proceed to exercise the right of ingress and egress to and from the Memorial Highway, as successors to the Cottings, by bulldozing an access road from their road to the Highway. Thereupon the United States brought the instant suit seeking an injunction against the threatened entry, and praying an adjudication that the government, as owner, was entitled to the exclusive possession of the land.
 
 
 7
 The judge came to the conclusion that the relief prayed by the United States should be denied and therefore dismissed the complaint. We are of opinion that this judgment was correct. We must look to the condemnation proceeding of 1933 in order to determine what interest the government acquired thereby, and particularly whether it acquired the easement which the Cottings reserved in their deed of February 11, 1930. The allegations in these proceedings leave no doubt in our minds on this point. The petition of condemnation describes the parcel sought to be condemned as an area of 194.790 acres 'which includes an area of 12.658 acres, conveyed and intended to be conveyed to the government by deed dated February 11, 1930, and recorded in Fairfax County liber R.M. 10, p. 284, together with all riparian rights thereto.' No reference was made to the easement of ingress and egress to and from the highway which the Cottings reserved by that deed, and no intent to acquire and pay for the easement was expressed. On the contrary the award of the Commissioner, the order of the court affirming the award, and the final judgment vesting title in the United States, all referred to the petition for the description of the property acquired. It follows, so far as the area of 12.658 acres is concerned, that the condemnation proceedings merely reaffirmed the title of the government to the property donated by the Cottings in their deed of February 11, 1930, and that title, as we have seen, was subject to the reservation of the easement therein described.
 
 
 8
 This conclusion is not at variance with the order of the District Court in the condemnation suit, vesting title in the United States in fee simple, to the property therein described. It is true that ordinarily an unqualified taking in fee by eminent domain takes all interests although they are not specified in detail, and so easements over lands condemned in fee simple are taken unless they are specifically excluded from the taking. Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216; Meadows v. United States, 4 Cir., 144 F.2d 751, 752-753; United States v. Sunset Cemetery Co., 7 Cir., 132 F.2d 163, 164-165.
 
 
 9
 But in this case, so far as the 12 acre strip was concerned, the condemnation was definitely limited in scope to the property which had been given to the Government free of charge in 1930, and that gift was subject to the easement. Moreover, it is correct to say that the Government acquired in 1930, and now holds, the fee simple title to the 12 acre strip, subject to the perpetual easement, for it is only the owner of a fee simple title that can create such an easement. See 17, Am.Jur., Easements, § 23; Narron v. Wilmington & W.R. Co., 122 N.C. 856, 29 S.E. 356, 40 L.R.A. 415; Stanolind Pipe Line Co. v. Ellis, 142 Kan. 102, 45 P.2d 846.
 
 
 10
 During the trial of the instant case in the District Court the defendants offered certain correspondence between the Cottings and the United States at the time of the condemnation proceeding which tended to show that the sum of $16,223.46, which the parties agreed upon in 1932, was paid for the supplemental area of 182 acres which the government then acquired, and had no reference whatever to the tract given to the United States by the Cottings in 1930; and also that the sole reason for the condemnation was the existence of the title defect which affected the entire Cotting holdings. The United States objected to this evidence but the objection was overruled; and thereupon the United States, without waiving its objection, offered certain correspondence on its part to show that in addition to the sum of $16,223.46 the United States gave to the Cottings a right of way over an abandoned railroad right of way, owned by the government, which gave the Cottings an entrance to their land on their northern boundary. This evidence was offered by the government as tending to show that the Cottings accepted the new easement in place of that reserved in their deed of 1930 which gave the Cottings an outlet on the eastern boundary of their large holdings; but there was no statement in the correspondence that access to the northern boundary was accepted in place of access to the highway on the east, and of course access to so large a tract of land at both points was highly desirable. The judge was of the opinion that this evidence, taken as a whole, tended to support the defendants' position, but he also held that, without considering it, the government's case could not be sustained. We are in accord with the latter conclusion and therefore do not need to consider the evidence in more detail or to pass upon its admissibility.[1]
 
 
 11
 During the pendency of this appeal the United States filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. praying that in the event the judgment of the District Court is not reversed on the merits, it be vacated and a new trial ordered on the ground of newly discovered evidence, or, in the alternative, that the case be remanded without decision for a consideration of the new trial motion by the District Court. The newly discovered evidence, offered by the government, is in the same category as that raised by the District Court over the government's objection. It adds little or nothing to that considered by the District Judge; but in any event the motion should be overruled since the conclusion of this court is based upon the condemnation proceedings without reference to the extrinsic evidence.
 
 
 12
 The alternative contention, that the United States has gained such title to the 12 acre strip by adverse possession since 1933 under § 8-5 of the Virginia Code of 1950 as to extinguish the Cotting easement, is also untenable. The position of the government has not been adverse in the sense that it has been open, notorious, hostile, inconsistent with the easement, and maintained with the intention to hold adversely. Nothing else will give good title by adverse possession under the Virginia decisions. Hulvey v. Hulvey, 92 Va. 182, 186, 23 S.E. 233; Creekmur v. Creekmur, 75 Va. 430; Stuart v. Meade, 119 Va. 753, 89 S.E. 866.
 
 
 13
 The government depends upon the landscaping and planting of the area alongside the paved road; but obviously this was not enough, since it did not interfere with means of access to the road from the adjoining lands. The government plans in evidence themselves establish this point beyond controversy, since they disclose plans for the beautification of the highway, including planting and shrubbery, which were made in 1931 and 1932 when, as the government concedes, the reservation in the Cotting deed was in effect. There was no permanent walls or fences, and the planting was done with full knowledge of the reservation for the purpose of improving the highway and not for the purpose of setting up a claim inconsistent with the reservation. The grant of access to a public highway from adjoining lands is not inconsistent with the existence and maintenance of the travelled road.
 
 
 14
 Affirmed.
 
 
 
 [1]
 In answer to one of the interrogatories, the government conceded that it had not given notice of the completion of the highway as provided in the reservation in the deed of donation above set out; but it is quite clear from the correspondence and otherwise that the Cottings and their successors have had actual notice of the completion, and the defendants do not now contend that the government is obligated to construct the access roads between their property and the highway. They desire only an adjudication that the right of access exists