ANDERSON, et al. v. BOYD, et al.

No. 40296 December 17, 1956 91 So. 2d 537

*Barnett, Jones & Montgomery,* Jackson; *H. V. Wall,* Brookhaven, for appellant, Mrs. M. M. Anderson.

R. L. *Netterville,* Natchez, for appellee, Estate of Charles F. Engle; *J. H. Keyer,* Natchez, for cross-appellants, Mrs. Bessie Griffing Boyd, et al.

ETHRIDGE, J.

This is a controversy over an aggregate of one-half of the minerals and the surface in approximately 93

acres of land in Franklin County. It involves issues of adverse possession of a severed mineral interest, the question of a cotenancy, and ouster of a cotenant by adverse possession.

### 1.

The suit was filed in the Chancery Court of Franklin County, by Robert A. Sammons and Eula Mae Calame, the two heirs of Robert Abner Sammons, deceased, hereinafter sometimes referred to as the Sammons group, against Mrs. Bessie Griffing Boyd, Alma M. Alexander, Alice M. Whitt, D. A. Biglane and Charles F. Engle, hereinafter sometimes referred to as the Boyd group, since the latter four persons claim under Mrs. Boyd. Another defendant was Mrs. M. M. Anderson. Before final decree, Engle died, and the suit was revived in the name of his executrix, trustee and devisee, Mrs. Alleyne Carpenter Engle. Mrs. Anderson, claiming a one-half interest in the surface and a 3/10ths mineral interest, filed a cross bill against the complainants and her codefendants. The Sammons group, original complainants, claim a 2/10th mineral interest. The Engle estate claims, under a conveyance from Mrs. Boyd, the entire surface and a 7/10th mineral interest. Mrs. Boyd conveyed to Alexander and Whitt a 3/10th mineral interest, but reserved to herself a life estate in 1/3 thereof, or a 1/10th mineral interest.

The final decree of the chancery court apparently adjudged that Sammons and Calame were the owners of a 2/10th mineral interest, but being somewhat ambiguous in this respect, these parties have appealed asking a specific adjudication in that respect. The court further held that Mrs. Anderson had lost her record title to one-half of the surface and 3/10ths of the minerals by adverse possession of the Boyd group over a period of more than ten years. Mrs. Anderson has appealed from that adjudication. Boyd, Alexander, Whitt and Biglane have cross-appealed from that part of the decree appar-

ently adjudicating the Sammons group to own a 2/10ths mineral interest.

Mrs. C. C. Smitha is the common source of title. On February 1, 1929, she conveyed this tract of land to Leo Alverdo, expressly retaining a vendor's lien to secure the unpaid purchase price. On February 11, 1931, Leo Alverdo and wife conveyed to Homer Howell, trustee, an undivided one-half interest. On February 11, 1931, Alverdo and wife conveyed to Robert Abner Sammons a 1/10th mineral interest, and on March 21, 1931, they conveyed to him an additional 1/10th mineral interest.

On August 17, 1931, Leo Alverdo and wife conveyed to appellant, Mrs. M. M. Anderson, a one-half interest in the surface and a 3/10th mineral interest. This left Alverdo with no interest in the land.

On November 16, 1932, Mrs. C. C. Smitha sued Mr. and Mrs. Leo Alverdo in the Chancery Court of Franklin County to foreclose the vendor's lien in her deed to Alverdo of February 1, 1929. Summons were served only on Alverdo and wife. Sammons, Mrs. Anderson and Howell were not made parties to this suit, although their deeds were on record before the suit was filed. On February 24, 1933, after a decree pro confesso had been entered, a final decree was rendered against the two defendants, Mr. and Mrs. Leo Alverdo.

On January 28, 1934, Mrs. C. C. Smitha quitclaimed her interest in the land to J. C. Smith. On motion of complainant, Mrs. Smitha, a special commissioner was appointed on February 20, 1934, to sell the land. The commissioner sold it on April 2, 1934, to J. C. Smith. This sale was confirmed by the chancery court on report of the commissioner on April 10, 1934. On April 16, 1934, the commissioner executed to J. C. Smith a commissioner's deed, purporting to convey this tract to Smith.

The 1929 deed from Mrs. Smitha to Alverdo conveyed to him other lands in addition to the tract now in issue. In 1936 the U. S. Government filed in the district court

eminent domain proceedings to condemn for part of a national park some of the lands affected by this deed, but not the instant tract. Alverdo and Homer Howell, trustee, filed an answer in that proceeding, asserting that the foreclosure of the vendor's lien was invalid because Howell had not been made a party defendant. Around the same time Alverdo filed a suit against J. C. Smith in the Chancery Court of Franklin County, to set aside the foreclosure sale to Smith. These claims by Howell and Alverdo were settled by agreement with J. C. Smith, and on May 17, 1934, Alverdo's wife and daughter, his heirs, and Homer Howell, trustee, quitclaimed their interest in this land to J. C. Smith. Thereafter the Federal eminent domain proceedings were concluded with disbursement to J. C. Smith of the value of the condemned property.

On August 7, 1937, Mr. and Mrs. J. C. Smith conveyed this tract to M. E. Boyd. On December 31, 1938, Boyd conveyed it to T. F. Graves. On July 15, 1939, T. F. Graves deeded the property back to M. E. Boyd.

On February 4, 1944, M. E. Boyd and wife, appellee Mrs. Bessie Griffing Boyd, executed an oil, gas and mineral lease to Mid-Continent Petroleum Corporation, excluding from the conveyance a 2/10th mineral interest conveyed to Sammons by the Alverdos. M. E. Boyd died in 1947, leaving his interest in this land to appellee, Mrs. Bessie Griffing Boyd. On October 8, 1948, she conveyed the land to Charles F. Engle, excepting therefrom a 3/10ths mineral interest. On December 10, 1948, she conveyed to Alexander and Whitt a 3/10th mineral interest, reserving in herself, Mrs. Boyd, a life interest in 1/3 thereof, or a 1/10th mineral interest. On February 19, 1949, Alexander and Whitt, appellees, conveyed to D. A. Biglane, appellee, a nonparticipating 2/10th royalty interest.

2.

The attempted foreclosure of the vendor's lien reserved in Mrs. C. C. Smitha, by the decree of February

24, 1933, and by the commissioner's deed thereunder to J. C. Smith, in April 1934, was invalid and void as to the appellants, Sammons, Calame and Mrs. Anderson. When the foreclosure suit was filed, the Sammons' mineral deeds and the deed to Mrs. Anderson from Alverdo were of record, yet they were not made parties to the foreclosure proceeding. At that time Sammons was the owner of a 2/10th mineral interest, subject to the vendor's lien, and Mrs. Anderson was the owner of a one-half interest in the surface and a 3/10th mineral interest, subject to the vendor's lien reserved in Mrs. Smitha. In order for any of them to be affected by the foreclosure, it was necessary that they be made parties to that proceeding. Seale v. Easterling, 196 Miss. 496, 17 So. 2d 324 (1944); Griffith, Miss. Chancery Practice (2d Ed. 1950), Sec. 118. Alverdo had conveyed away all of his estate in this tract, one-half to Homer Howell, trustee, and the remainder to Sammons and Mrs. Anderson. These deeds were then of record. Hence the attempted foreclosure of the vendor's lien in 1933 and the April 1934 commissioner's deed were invalid and void insofar as the Sammons' mineral interest and the interests of Mrs. Anderson and of Homer Howell, trustee, were concerned.

### 3.

 Code of 1942, Sec. 745, provides: "Actions for property sold by order of court.—An action shall not be brought to recover any property hereafter sold by order of a chancery court, where the sale is in good faith and the purchase-money paid, unless brought within two years after possession taken by the purchaser under such sale of the property." Appellees contend that this statute precludes appellants from attacking the foreclosure sale, but we cannot agree. The statute has no application to persons who were not parties in the foreclosure proceedings. Pennington v. Purcell, 155 Miss. 554, 125 So. 79 (1929).

4.

With reference to the 2/10th mineral interest, claimed by Sammons and Calame, the record shows that there has been no adverse possession by appellees of the minerals, by drilling or mining and producing minerals from this tract. Evidence as to possession reflects only grazing of cattle and some cutting of timber. Mrs. Boyd testified that in her oil, gas and mineral lease of 1944 to Mid-Continent Petroleum Corporation she admitted that Sammons owned the 2/10th mineral interest. This interest was severed from the balance of the estate by the two 1931 mineral deeds to Robert A. Sammons. Where a severance of the estate in oil, gas and minerals has been created separate and apart from the land, adverse possession of the land is not adverse to such mineral estate. Adverse possession of the latter must consist of actually taking possession of the minerals by drilling wells, or digging mines, and capturing or taking possession of the minerals. White v. Merchants and Planters Bank, 90 So. 2d 11 (Miss. 1956); Cook v. Farley, 195 Miss. 638, 15 So. 2d 325 (1943); Levy v. Campbell, 200 Miss. 721, 28 So. 2d 224 (1946); State v. Wilbe Lbr. Company, 217 Miss. 346, 64 So. 2d 327 (1953). Hence appellants Sammons and Calame have not been divested of their 2/10th mineral interest by any adverse possession of appellees or their predecessors in title, and our final judgment will adjudicate that they are the owners of an undivided 2/10th interest in the minerals under this tract of land. By the same token, there is no merit in the cross-appeal of Boyd, Alexander, Whitt and Biglane contending to the contrary, and the case is affirmed on cross-appeal.

The next question is whether a tenancy in common between Mrs. Anderson and J. C. Smith was created on May 17, 1934, when Homer Howell, trustee, owner of a one-half interest in this tract, conveyed by quitclaim deed this interest to J. C. Smith. Since the attempted

foreclosure of the vendor's lien and the commissioner's deed to J. C. Smith were void and invalid as to Mrs. Anderson, who was then a record owner of one-half of the surface and 3/10ths of the minerals, and since Homer Howell, trustee, was also an owner of a one-half interest in the land at that time, Mrs. Anderson and Homer Howell, trustee, were tenants in common. On May 17, 1934, Howell conveyed his one-half interest to J. C. Smith. Smith thereupon became a tenant in common in this land with Mrs. Anderson. ■■ ■ It is well established that one who purchases or obtains by conveyance the undivided share of a tenant in common becomes a cotenant with the remaining owner or owners. 86 C.J.S., Tenancy in Common, Sec. 8b; Howard v. Wactor, 41 So. 2d 259 (Miss. 1949); 14 Am. Jur., Cotenancy, Secs. 11-13, 20; Code of 1942, Sec. 834. See also Cohea v. Hemingway, 71 Miss. 22 (1894). Hence Mrs. Anderson and J. C. Smith were tenants in common in this land on and after May 7, 1934, when Homer Howell, trustee, conveyed his one-half interest therein to J. C. Smith, and this relationship continued with reference to the successors in title of J. C. Smith, M. E. Boyd, T. F. Graves, Mrs. Bessie Griffing Boyd, Charles F. Engle, and the other appellees.

### 6.

The remaining question is whether the chancellor was warranted in finding that Smith, Boyd and the appellees divested appellant Mrs. M. M. Anderson, their cotenant, of her record title to one-half of the surface and 3/10ths of the minerals by an ouster and adverse possession for more than ten years.

■■ ■ After a careful consideration of the testimony of the seven witnesses concerning ouster, adverse possession and lack of it with reference to this land, we conclude that, in the light of the established principles with reference to ouster and adverse possession between cotenants, the evidence is wholly inadequate to establish

that appellees ousted Mrs. Anderson from her cotenant's estate and obtained title against her by adverse possession.

 It is well established that possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant-in-common. In order to establish ouster of cotenants by a tenant-in-common in possession, so as to initiate and constitute adverse possession, cotenants out of possession must have knowledge of the adverse claim, either by actual knowledge or the equivalent thereof. Nichols v. Gaddis and McLaurin, Inc., 75 So. 2d 625 (Miss. 1954); Hurst v. J. M. Griffin & Sons, Inc., 209 Miss. 381, 46 So. 2d 440 (1950); Vanzandt v. Vanzandt, 85 So. 2d 792 (Miss. 1956).

Without lengthening this opinion in order to detail this evidence, it shows in brief that Davis Anderson who owned property to the south placed a fence on the north side of his property, and on the southeast side of this tract for a length of about one-quarter, in order that he might graze some of his cattle on this tract over a period of several years, as authorized by J. C. Smith and M. E. Boyd. The land is shaped like a right triangle, the hypotenuse (the northwest side) being the right of way of a railroad, the east almost vertical line being the west line of a national park and of some property owned by one Graves, and the south line being the north line of land once owned by Davis Anderson. The railroad maintained a fence on the longest side of the triangle, the northwest, in various states of repair, and there was a fence of unidentified repair on the west side. On two occasions over a period of twenty years, some timber and pulpwood were cut off of the property. There have never been any improvements on it. It is not cultivatable. It is rocky with hills and gullies. J. C. Smith and his successors in title have paid taxes on the land, and Mrs. Anderson has paid no taxes on her interest. But of

course cotenants have correlative obligations to pay taxes on land, with the right to reimbursement from their fellow cotenants for their share.

In addition to the established rule requiring knowledge or the equivalent thereof to constitute ouster of a cotenant, such facts must be established by clear and convincing evidence. Nichols v. Gaddis and McLaurin, supra. Applying these principles, it is manifest that appellees wholly failed to show any ouster of Mrs. Anderson and any adverse possessory title against her, in view of the relatively wild nature of this land and the scrambled nature of its sporadic use and possession. For those reasons the chancery court was in error in holding that Mrs. Anderson had been deprived of her record title to one-half of the surface and three-tenths of the minerals and that her cotenants, appellees, were vested with that interest.

On direct appeal, reversed and judgment rendered for appellants; on cross-appeal, affirmed.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.