WILDER, et al. *v.* CURRIE, et al.

No. 40493　　　　　June 3, 1957　　　　95 So. 2d 563

464

October 7, 1957                    97 So. 2d 384

*R. W. Heidelberg, Jr., C. W. Sullivan,* Hattiesburg, for appellants.

*E. J. Currie & E. J. Currie, Jr.,* Hattiesburg, for appellees.

APPELLANTS IN REPLY.

ROBERDS, P. J.

This is a legal contest over the ownership of a one-half undivided interest in a small tract of land, consisting of about twenty acres, described in the bill, and located in the western part of the City of Hattiesburg, Mississippi.

Eugene Wilder and Mrs. Katherine Wilder Rawls claim to be the owners of such one-half interest in the proportions, respectively, of 8/18ths and 1/18th of the whole. They filed the bill herein asserting such ownership in themselves and admitting that the other half interest was owned in equal proportions by defendants, but charging that defendants were also wrongfully claiming to be the sole owners of the entire parcel. The bill prayed for adjudication of the title in the parties as set out in the bill and for sale of the land, division of the proceeds and for general relief.

Appellees, by answer, denied appellants owned any interest in the land, and, by cross bill, asserted that appellees owned the entire interest. They prayed for cancellation of all claims of appellants and for confirmation of their title to the entire tract.

The chancellor decreed title to be in appellees and confirmed their title, from which decree complainants appealed to this Court.

Appellants are Eugene Wilder and Mrs. Katherine Wilder Rawls. Appellees are Mrs. Terry Anderson Currie, Edward Alexander Currie, Jr., Overton A. Currie and Daniel McMahon Currie, widow and children and the heirs-at-law of Alexander Currie, who departed this life intestate May 5, 1947. In this opinion we will

refer to appellants as The Wilders and to appellees as The Curries, unless otherwise designated.

A number of questions are raised on this appeal.

■■ ■ After the pleadings had been read to the chancellor, he, upon motion of The Curries, dismissed the bill, The Wilders having offered no evidence. We think that was error under the circumstances. The allegations of the bill with its exhibits, in our opinion, deraigned title to the one-half interest into The Wilders. The answer, as we construe it, did not deny the essential, material facts asserted in the bill. It did deny the conclusions which The Wilders drew from the asserted facts. In their cross bill The Curries alleged that The Wilders had lost title by laches and that they, The Curries, had gained title by acts of adverse possession. The case was tried mainly upon the theory of acquisition of title by adverse possession. Laches and adverse possession are affirmative defenses. The Wilders denied that they had been guilty of laches and denied The Curries had acquired title by acts of adverse possession. Under the circumstances it was error to dismiss the bill at this stage of the trial. Griffith, Miss. Chancery Practice, Sections 350 and 371.

The principal issue in this cause is whether or not The Curries became vested with title to the disputed one-half interest by acts of adverse possession exercised over the property by themselves, by Aucy Mayfield and by Alexander Currie, their predecessors in title. That depends largely upon whether or not the relation of tenants in common existed between The Curries and The Wilders and their predecessors in title. In Anderson v. Boyd, Miss.    , 91 So. 2d 537, this Court said: "It is well established that possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant-in-common. In order to establish ouster of cotenants by a tenant-in-common

in possession, so as to initiate and constitute adverse possession, cotenants out of possession must have knowledge of the adverse claim, either by actual knowledge or the equivalent thereof. Nichols v. Gaddis & McLaurin, Inc., Miss. 1954, 75 So. 2d 625; Hurst v. J. M. Griffin & Sons, Inc., 1950, 209 Miss. 381, 46 So. 2d 440, 47 So. 2d 811; Vanzandt v. Vanzandt, Miss. 1956, 85 So. 2d 792.'' See also Howard v. Wactor, 41 So. 2d 259 (Miss.).

■■■ Did such relation come about in this case? On September 28, 1932, the land was owned by Mrs. Ruth Wilder Fox and a number of other Wilders as tenants in common. Mrs. Fox owned a one-half undivided interest and the other co-owners together had title to the other one-half undivided interest. The Curries, when this bill was filed, had record title to the one-half interest of Mrs. Fox and Eugene Wilder and Mrs. Rawls had record title to the other one-half interest. On September 28, 1932, Mrs. Ruth Wilder Fox executed to Alexander Currie what purported to be a warranty deed to the entire property. As a part of the consideration for that deed the grantee assumed and agreed to pay all back taxes against the property. Including taxes and damages for the year 1930-1931 and all accruing taxes. Mrs. Fox, as stated, owned only a one-half undivided interest and, of course, that was all she conveyed to Mr. Currie, although the deed purported to convey the entire title. The deed only conveyed what she had. Cohea v. Hemingway, et al., 71 Miss. 22, 14 So. 734; Hurst v. Griffin & Sons, 209 Miss. 381, 46 So. 2d 440. By this purchase Alexander Currie became a tenant in common with the other co-owners. Cohea v. Hemingway, supra; Clark v. Rainey, 72 Miss. 151, 16 So. 16; Howard v. Wactor, supra; Anderson v. Boyd, supra; 86 C. J. S., p. 362; LeBlanc v. Busby, 223 Miss. 415, 78 So. 2d 456. In Anderson v. Boyd, supra, the reporter deduced this rule: ''One who purchases or obtains by conveyance the undivided share

of a tenant in common becomes a cotenant with the remaining owner or owners.'' ██ ██ The nature and essentials of the relation are set forth in 86 C. J. S., supra, in this language: ''Tenants in common hold by several and distinct titles, with unity of possession; and each tenant owns an undivided fraction, being entitled to an interest in every inch of the property. - - -'' ██ ██ The tenants may claim their several titles and interests from the same or entirely different sources; the shares may be unequal and the modes of acquisition of titles may be unlike. ██ ██ Tenants in common are united only by their right to possession of the property. ██ ██ Each tenant has an undivided fraction and each is entitled to an interest in every inch of the soil, each being entitled to occupy the whole in common with the others and to receive his share of the rents and profits. ██ ██ The correlative duties of the parties arise not from some outside relationship, such as guardian and ward, but from the common ownership and the common right to occupy and use the property. ██ ██ In joint tenancy unity of interest, title, time, and possession are essential elements. Thus is seen the distinguishing characteristics of the two tenancies. From the foregoing it is evident that when Alexander Currie was conveyed a one-half undivided interest in the property in controversy by Mrs. Fox, he became a tenant in common with the other cotenants.

██ ██ But The Curries say that although that might be true considering only the effect of the conveyance of September 28, 1932, to Alexander Currie by Mrs. Fox, yet they further say that Alexander Currie became vested with the entire title by virtue of a warranty deed executed to him by Aucy Mayfield November 20, 1939, and also by a deed from the City of Hattiesburg to Alexander Currie dated April 13, 1940. These were the circumstances underlying the execution of those two instru-

ments. On September 7, 1931, the land sold to the State of Mississippi for nonpayment of the taxes thereon for 1930. That was approximately a year before Mrs. Fox conveyed to Alexander Currie, under which deed Alexander Currie assumed and agreed to pay all outstanding taxes against the property. The State had title until January 30, 1939, on which date it issued a forfeited land patent to Aucy Mayfield, a niece of Alexander Currie. Subsequent to the sale to the State there was a purported tax sale to the City of Hattiesburg. On April 13, 1940, the City of Hattiesburg issued a forfeited land patent to Alexander Currie. Apparently the tax sale to the municipality was void since it appears that the title to the land was in the State when the sale took place. However, when Alexander Currie acquired title through these tax sales he was a tenant in common with The Wilders and his acquisition of title in this manner was for the benefit of all the tenants in common, with the right to charge the common property with the cost of acquisition. Cohea v. Hemingway and Clark v. Rainey, both supra; Griggs v. Griggs, 218 Miss. 433, 67 So. 2d 450. In the Griggs case this Court said:

"The authorities are uniform in affirming the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee, for it is generally agreed that when the common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common cannot by the purchase of such title assert it against his cotenants. 14 Am. Jur., p. 123, Cotenancy,

par. 54, Jonas, et al. v. Flanniken, 69 Miss. 577, 11 So. 319; Cohea v. Hemingway, 71 Miss. 22, 14 So. 734; Clausell v. Riley, 188 Miss. 647, 196 So. 245; Howard, et al. v. Wactor, et al. (Miss.), 41 So. 2d 259; Smith, et al. v. Smith, et al., 211 Miss. 481, 52 So. 2d 1.

"The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them. Shelby v. Rhodes, et al., 105 Miss. 255, 62 So. 232; Beaman, et al. v. Beaman, et al., 90 Miss. 762, 44 So. 987."

■■ In Howard v. Wactor, 41 So. 2d at p. 261, this Court stated the rule in this language: "A co-tenant in possession is under a duty to pay the taxes but failing in that has a duty to redeem from the tax sale for the benefit of all of the tenants, in common, and he cannot purchase any interest adverse to them, and a purchase of an outstanding tax title by a tenant in common inures to the benefit of all tenants the cost of the redemption being a common charge against the property held in common."

■■ Since the parties bore the relation of tenants in common, the question is whether or not The Curries made such claim to and performed such acts over the property as to divest the title out of The Wilders and invest it in The Curries. This makes it necessary to briefly summarize the testimony on these questions. In weighing the evidence it should be kept in mind that title to the property was in the State of Mississippi from September 7, 1931, to January 30, 1939, and during that period the acts of adverse possession were not effective against the State. Smith v. Smith, 211 Miss. 481, 52 So. 2d 1.

Will Burns testified that he tried to buy the land from Mr. Alexander Currie. He inquired and was informed

that Mr. Currie owned it. Since 1932 several persons have lived upon the land. There was an old fence around part of it. A Mr. Gould lived there for a number of years. In 1934 and 1935 a man by the name of Guysar lived on the property. There was an old house on the land. Witness said that two or three people worked part of the land in 1937. There was a hog pen on the back side of the property.

Woodson Johnson has been familiar with the land since 1930. He understood it was owned by a Mr. Currie. Stevenson and Huntley lived on the property and worked some of it around 1934 to 1937. No one has lived on it since 1934.

Hattie Mae Stevenson Clayton has known the land since 1932. She and her stepfather moved on it that year. They got permission from Mr. Alexander Currie. They lived on the land three years, and farmed some of it. She knew it as the Currie land. Mr. Alexander Currie talked to her stepfather about it. She says about twenty acres was under wire fence and she and her mother and stepfather cultivated about ten acres and raised some chickens and hogs. She said "it was a right smart under fence when we moved there." They kept about nine or ten hogs on the property and had a chicken house and raised some chickens. All of this was under permission of Alexander Currie.

Mary Stevenson lived on the land three years with her relatives. She does not know from whom the property was rented. Mr. Alexander Currie came to see about it a number of times. She knows nothing of the possession since 1935.

Henry Bracey moved on the land in 1930; there was a house on it; everybody told him the land belonged to Mr. Alexander Currie. Since 1932 a number of people have lived on it. They worked small patches, three or four acres. Witness cultivated three or four acres in

1937. He said there was a fence partly around the land but it had largely rotted down before 1937. The residence was empty in 1937. He said "Bell had a hog pen on the place and some little patches around it."

Ishmon Bolden started working for Mr. Alexander Currie about 1939 and continued to work for him until Mr. Currie died. Witness farmed some of the land in 1943 and had a little cotton there; said that "off and on" he farmed it ten or twelve years. He got permission from Mr. Alexander Currie and after Mr. Currie's death his heirs gave the witness permission to use the land. About 1940 Mr. Currie constructed a new home in Hattiesburg. Witness was one of the carpenters. The witness, under the direction of Mr. Currie, tore away a part of the old residence on the land in question and used the timbers therefrom in the construction of a new home. From 1939 to 1947 the witness, under the direction of Mr. Alexander Currie, went out to the land every two weeks to see if anyone was cutting timber or trespassing upon the property. He reported to Mr. Currie. He always heard the land referred to as the "Currie land." For about two years after the death of Mr. Currie, May 5, 1947, he had nothing to do with the property. Since then he has been working part of the land under the direction of the Currie heirs. He referred to the old hog pen and a potato patch, which were located on the back of the land and which could not be seen from the main highway. Witness repeated that he kept a watch on the land for Mr. Currie and reported to him. "I notified him every time I went over there, and he would always pay me every time I would go over there."

Elijah Bell has known the land about fifteen years. He kept some hogs on it by permission of Mr. Currie about eleven years before the trial. He said someone stole his hogs at Christmas time in 1955 and he had no more need for the hog pen. He never heard anyone

claim the land except Mr. Currie. He said he worked a "small patch" near his hog pen. He also worked small patches of corn, peas and potatoes. All of this was by permission of Alexander Currie.

Miss Helen Watkins testified that she worked as a secretary for Alexander Currie from 1935 to the date of his death. She knows the location of the land. She never heard anyone claim the land during the life of Mr. Currie except Mr. Currie himself. Since his death his widow and three sons have claimed to own it. She had charge of Mr. Currie's business papers and records and since his death she has been secretary to Mr. Overton Currie, son of Alexander Currie. She testified that the private files of Alexander Currie showed he owned the land.

Clyde W. Easterling, Chancery Clerk of Forrest County, testified he had known Mr. Eugene Wilder, one of the appellants, for at least twenty-five years. Mr. Wilder is around sixty-five years of age. Mr. Wilder has been a salesman for Barron Motor Company of Hattiesburg for the past twenty-five years. He has been living in Hattiesburg all of that time.

The Curries offered in evidence the deed from Mrs. Fox to Alexander Currie dated September 28, 1932; the tax land patent from the State to Aucy Mayfield dated January 30, 1939; warranty deed from Aucy Mayfield to Alexander Currie dated November 30, 1939; patent from the City of Hattiesburg to Alexander Currie dated April 13, 1940; oil and gas lease on the land from Alexander Currie to Superior Oil Company dated August 4, 1943; and the original bill and decree dated August 29, 1944, confirming the title in Alexander Currie as against the State. The Wilders were not parties to that proceeding. The Curries also introduced another oil and gas lease to the Superior Oil Company dated January 23, 1945; also the administration proceedings on the estate

of Alexander Currie, deceased; and also a deed from the heirs of Alexander Currie dated June 4, 1953, conveying a lot, which was a part of the twenty acres, to the Coca-Cola Bottling Company.

The Curries also showed that beginning in 1940 and continuing through 1955 the property had been assessed for state, county and municipal taxes to Aucy Mayfield and Alexander Currie; after the death of Mr. Currie to his widow and three sons; and that said state, county and municipal taxes had been paid by Aucy Mayfield and Alexander Currie and his heirs.

Cross-defendants, The Wilders, introduced Mrs. Ada Wilder, who established heirship of Mr. Dewey Wilder, deceased, as to which there is no dispute.

The Wilders also introduced Mr. Robert Waller, a photographer. He identified pictures he made upon the land. These pictures show the land to be grown up in grass, weeds and bushes; that it had no improvements upon it at the time the pictures were made and that it was difficult to discover the hog pen about which the witnesses had testified.

Mr. W. L. Morrison testified that he was a civil engineer and was with Mr. Waller when he hade the pictures. He explained that this property was a part of a subdivision which had been created about forty years ago. The streets and alleys had never been opened. He testified that the land was rolling, largely covered with small pine trees, except that on the back a creek ran through the land and it was heavily wooded. The witness testified that he saw about half an acre which had been cultivated to potatoes; and that this could not be seen until one got very close to it. The hog pen was about 20 x 30 feet in size and it had a fence partly around it; that the amount of land in cultivation was about half an acre, that the cultivated land and the hog pen could not be seen from the public highway. He said he saw a small area

which had been cultivated; that this was on the back of the twenty acres through which the creek ran.

■■■ The Curries invoke the benefit of Sections 716 and 717, Miss. Code 1942, dealing with possession after tax sales. We do not think these sections are applicable here. Griffin v. Griffin, 194 Miss. 622, 11 So. 2d 311; Howard v. Wactor, supra; Smith v. Smith, supra. The rights are to be tested by the ten-year statute of adverse possession.

The chancellor held that The Curries had title by adverse possession to the one-half interest claimed by The Wilders. The question is whether he was justified under the testimony in so doing.

■■■ It appears to us quite clear that he was amply justified in finding that Aucy Mayfield, Alexander Currie and his heirs had the actual, open, peaceable, continuous and exclusive possession of the land for ten years, claiming it as owners as required by Section 711, Miss. Code 1942. The only question is whether such possession was hostile, ■■■ and that depends upon whether the other cotenants had notice, or were charged with notice, of such claim and possession, and, in effect, were ousted. The rules for testing the question of ouster were stated in Nichols v. Gaddis & McLaurin, supra, in these words: "An ouster cannot be proved merely by acts which are consistent with an honest intent to acknowledge the rights of the cotenant. It does not necessarily imply an act accompanied by force. Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant in common. In the present case, before the foreclosure in 1932 James W. Nichols was in possession of the property as a tenant in common. ■■■ In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his ad-

verse claim either 'from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto', as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed. Hurst v. J. M. Griffin & Sons, Inc., 1950, 209 Miss. 381, 46 So. 2d 440, 442, 47 So. 2d 811. The Hurst case further holds: 'The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So. 2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.' "

There is no direct specific proof that Eugene Wilder knew that Aucy Mayfield and Alexander Currie until his death, and after his death, his heirs, were exercising exclusive acts of ownership over the land and claiming to be the exclusive owners thereof, but the chancellor was justified in finding that the circumstances were such as to charge Eugene Wilder with such notice. Eugene Wilder was a mature man. He had resided in Hattiesburg for over twenty-five years. He had been employed by the Barron Motor Company as a salesman. He was evidently a good business man. The chancellor had the right to assume that. He was under no disability of any kind. The land in question was located within the corporate limits of Hattiesburg. He knew the land had been sold to the State for taxes in 1931. He likely knew the State had granted a patent to Aucy Mayfield. He doubtless knew Aucy Mayfield and The Curries had paid all taxes on the land for fifteen years. He knew he had not paid any for some twenty-four years. Mr. Alexander Currie had leased out part of the land from year to year. It was notorious in the community that he claimed to be the exclusive owner thereof. He exercised

exclusive possession and control over the land. Mr. Alexander Currie had torn down the house on the land, or, at least, had torn away and removed a part of it, and used the materials in the construction of a new home in Hattiesburg. It taxes credulity too much to say that under all the circumstances Eugene Wilder did not have knowledge that Aucy Mayfield and Alexander Currie and his heirs were claiming to be the sole owners of the land, and exercising exclusive management and control over it. We hold that The Curries acquired title by acts of adverse possession as against Eugene Wilder, except as to the 1/18th interest he acquired from Edwin Dewey Wilder, as now explained: Edwin Dewey Wilder conveyed this 1/18th undivided interest to Eugene Wilder August 15, 1953. He had inherited this interest from Dewey Wilder, his father, who had died in 1938 when title to the property was vested in the State. At that time Edwin Dewey Wilder was nine years of age. He became twenty-one years of age September 12, 1950, just five years before the present suit was brought. ▮▮ Section 711, Miss. Code 1942 — the ten-year adverse possession statute — does not begin to run against minors until the disability of minority has been removed. Eugene Wilder is vested with the 1/18th undivided interest in the land which was conveyed to him by Edwin Dewey Wilder.

▮▮ However, the facts do not apply to the ouster of Mrs. Rawls, one of the appellants, as they do to Eugene Wilder. Mrs. Rawls is shown by the bill to be a resident of Marietta, Georgia. She was related by blood to Eugene Wilder. He was her cotenant. He was on the ground. There is no proof that she knew Alexander Currie and his heirs were claiming to be the exclusive owners of the property, and we detect nothing charging her with notice. She reasonably could have relied upon her cotenant-relative to look after the property and see that the taxes thereon were paid. We find that Mrs.

Rawls is the owner of a 1/18th undivided interest in the land, subject to be charged with her proportion of the taxes which have been paid on the land.

In 1920 Carl and Dewey Wilder owned an undivided interest in the subject land. They then executed to Mrs. J. F. Wilder a written power-of-attorney empowering her to convey their interest in this land as attorney-in-fact. On June 5, 1931, Mrs. J. F. Wilder executed a warranty deed to Mrs. Ruth Wilder Fox. As heretofore stated, Mrs. Fox, on September 28, 1932, executed a deed to Alexander Currie. The Curries contend that Mrs. J. F. Wilder, by the foregoing deed, conveyed to Mrs. Fox as attorney-in-fact the interest in the land belonging to Carl and Dewey Wilder. The contention, in our view, is not well known. The deed from Mrs. J. F. Wilder, executed some eleven years after the execution of the power-of-attorney, did not purport to convey as attorney-in-fact. It made no references to the power-of-attorney to any interest or title of Carl and Dewey Wilder in the land. She conveyed only in her personal, individual capacity. Mrs. J. F. Wilder herself owned an interest in the land. She could not convey more than she owned regardless of the fact that the conveyance purported to be a warranty deed. The same question, whether the conveyance was under power-of-attorney, was involved in the case of R. S. Majure, Sr. v. Gulf Refining Co., et al., affirmed per curiam by this Court May 20, 1957, not yet reported. Cohea v. Hemingway, supra, by analogy, held the same thing.

Affirmed in part; reversed in part and remanded.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.

## ON SUGGESTIONS OF ERROR AND MOTIONS

ETHRIDGE, J.

We have concluded that the suggestion of error filed herein by Eugene Wilder, an appellant, should be sustained in part. He is correct in contending that the record does not show an ouster and adverse possessory title in favor of appellees (a) as against the 1/6th interest in the land owned by Carl Wilder and conveyed by him in 1953 to Eugene Wilder, and (b) as against the 1/18th interest owned by Mrs. Ada Wilder and conveyed by her to Eugene Wilder in 1953.

██ ██ For there to be an ouster of cotenants, those out of possession must have notice of the adverse claims of those in possession either from actual knowledge or the equivalent thereof. See original opinion in 95 So. 2d 563, 570. And this must be established by clear and convincing evidence. ██ ██ The burden of proof on this issue was upon appellees, ██ ██ and the record fails to reveal any direct or indirect evidence which would support a finding that Carl Wilder and Mrs. Ada Wilder had notice, actual or the equivalent thereof, of the appellees' adverse claims, which would have constituted an ouster followed by 10 years continuous adverse possession. Their status was substantially that of Mrs. Rawls, appellant, in whom was vested a 1/18th interest, as our original decision held.

These two owners of parts of the record title conveyed their fractional interests to Eugene Wilder in 1953. Hence appellant's suggestion of error is sustained in part: Eugene Wilder will be adjudicated to be vested with the 1/6th interest conveyed to him by Carl Wilder and the 1/18th interest conveyed to him by Mrs. Ada Wilder. In other respects appellant's suggestion of error is overruled.

In brief, the final judgment of this Court will adjudicate Eugene Wilder to be the owner of the following undivided interests in the property: 1/18th interest acquired from Edwin Dewey Wilder; 1/18th interest acquired from Mrs. Ada Wilder; and a 1/6th or 3/18ths interest acquired from Carl Wilder. This aggregates a 5/18ths interest vested in Eugene Wilder. The 1/18th interest adjudged by the original opinion to be vested in Mrs. Katherine Wilder Rawls remains unchanged. The remaining 3/18ths, out of the 1/2 interest in the land which is in controversy in this case, was correctly adjudged to have been divested from him by the ouster and adverse possession of appellees and their predecessors in title, and to be vested in appellees.

The suggestion of error filed herein by appellees is overruled.

■■ Appellees' petition or motion to remand this case to the trial court for the introduction of additional evidence, on the issue of whether the several Wilders were ousted by actual knowledge or the equivalent thereof of appellees' adverse claim, is denied for two reasons: It constitutes in effect a suggestion of error filed after the time permitted for the filing of such pleadings by Rule 14 of this Court. Therefore Eugene Wilder's motion to strike that petition from the files and to dismiss the same is sustained.

Moreover, appellees' petition to remand must be denied also on the merits, since it does not fall within the narrow limitations of the doctrine authorizing remands for further proof. ■■ An appeal in the Supreme Court can be considered solely on the record made in the trial court. Griffith's Mississippi Chancery Practice (2d ed. 1950), Secs. 675, and 595, page 632, footnote 7. The few cases in which such remands have been ordered, such as Moore v. Sykes, 167 Miss. 212, 149 So. 789 (1933), involved situations where the court refused from the

beginning to pass upon the issues because the record failed to disclose important and material pertinent facts, "which at the same time are revealed by the record as being available . . ." Neither circumstance exists here. This record is wholly silent on the issue of knowledge or the equivalent thereof on the part of the Wilders in question. The burden of proof is on the appellees. We have considered carefully this petition, and have concluded that it would not be a sound exercise of this Court's discretion to remand this cause.

Therefore the rights of the respective parties will be adjudicated as set forth above. Both of the appellants are chargeable with their proportions of the taxes which' have been paid on the interests in the land adjudicated here to be vested in them.

Suggestion of error of appellant Eugene Wilder sustained in part and overruled in part; appellees' suggestion of error overruled; appellees' petition to remand denied; appellants' motion to strike appellees' petition to remand sustained.

*McGehee, C. J.,* and *Roberds, Lee* and *Holmes, JJ.,* concur.