# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00592-COA

JOSHUA SEYMOUR, AS ADMINISTRATOR OF THE ESTATE OF BRENDA F. SEYMOUR, DECEASED

APPELLANT

v.

RICHARD G. TURNER, DECEASED

APPELLEE

DATE OF JUDGMENT: 03/16/2016
TRIAL JUDGE: HON. JAYE A. BRADLEY
COURT FROM WHICH APPEALED: JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT: VIRGIL G. GILLESPIE
ATTORNEY FOR APPELLEE: RICHARD G. TURNER (PRO SE)
NATURE OF THE CASE: CIVIL - REAL PROPERTY
DISPOSITION: AFFIRMED - 10/03/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Joshua Seymour, administrator of the estate of Brenda F. Seymour, appeals the judgment of the Jackson County Chancery Court, arguing that the parties' joint tenancy was terminated by Brenda's filing of her partition suit, and that the chancellor erred in failing to award Brenda's estate with one-half of the ad valorem tax payments made on the property from 2008-2012. Joshua is not alleging that the chancellor's decision was an abuse of discretion, since he finds no fault with the chancellor's factual rulings, but, rather, his position is that the chancellor applied an erroneous legal standard in regard to the circumstances giving rise to this appeal brought about by Brenda's death.

¶2. Finding no error, we affirm.

FACTS

¶3.     In light of the chancery court's succinct statement of facts in its final order, Appellee

Richard Turner's[1] failure to timely submit his appellate brief,[2] and Joshua taking no issue

with the court's statement of the facts, as he used them in his brief, they will be restated

below:

> Brenda Seymour and Richard Turner met in 1984 and were involved in a
> romantic relationship.  In 1995, Brenda and Richard purchased a home on
> Point Aux Chenes Road.  The deed to the property indicated that Richard
> Turner and Brenda Seymour were "joint tenants with express right of
> survivorship, and not tenants in common[.]"  Shortly thereafter, Brenda and
> Richard moved into the home on the property.
>
> * * * *
>
> Brenda filed a [c]omplaint on February 3, 2011[,] requesting that the [c]ourt
> partite the property.  Mississippi Code [Annotated section] 11-21-3 [(Rev.
> 2004)] allows a chancery court to partite property held by joint tenants.  After
> the litigation was filed, Brenda died [on November 25, 2012,] and her [e]state
> was substituted as the [p]laintiff.

¶4.     On February 26, 2015, Joshua filed an application to the clerk for an entry of default

and a supporting affidavit.  A clerk's entry of default was entered on February 26, 2015. On

February 11, 2016, the matter came on for trial.  Counsel for Brenda's estate was present.

Richard was also present and proceeded pro se.  As Richard failed to answer the complaint

in this matter, a default judgment was also entered.  With respect to the default judgment, the

complaint and all of the allegations were taken as admitted and confessed, except that the

---

[1] Richard is now deceased; he passed away September 11, 2016.

[2] The Mississippi Supreme Court denied Joshua's motion seeking additional time for
Richard's estate to file an appellate brief.  No brief was filed.

court would determine all questions of law. At trial, Joshua testified that the taxes on the property had been paid by Nancy Grimes, Brenda's mother, and that, later, Nancy assigned her rights to reimbursement of those payments to Brenda's estate. Richard admitted at trial that he did not make the payments. Ultimately, the court found that upon Brenda's death, the subject property—which was held by Brenda and Richard as joint tenants with the right of survivorship—automatically vested in Richard. In her order, the chancellor did not address the ad valorem taxes, but did find that Richard owned the house by virtue of the right of survivorship that accompanies a joint tenancy. On April 4, 2016, the court denied Joshua's motion for reconsideration, and this appeal followed.

## DISCUSSION

¶5. "An appellate court will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, [the decision] was manifestly wrong [or] clearly erroneous, or [the chancellor] applied an erroneous legal standard." *Jones v. Graphia*, 95 So. 3d 751, 753 (¶6) (Miss. Ct. App. 2012). However, questions of law are reviewed de novo. *Id*.

I. *Joint Tenancy*

¶6. Joshua points out that four unities—time, title, interest, and possession—must be present in a joint tenancy, and if one of the four unities is eliminated or terminated, the joint tenancy defaults into a tenancy in common. He argues that when Brenda filed the lawsuit on February 3, 2011, the filing terminated the joint tenancy existing between the parties and rendered it a tenancy in common, because the unity of possession had been severed. "Unity

3

of possession" means that each joint tenant must have an undivided share in the property. *See Wilder v. Currie*, 231 Miss. 461, 474, 95 So. 2d 563, 566 (1957). He contends that that was no longer the case upon the filing of the petition to partite, as once the partition suit was filed, Brenda was requesting either a division in kind or a division by sale. Consequently, he argues that the joint tenancy was transformed into a tenancy in common, which is not accompanied by a right of survivorship. Therefore, according to him, Brenda's death did nothing to deprive her estate of its ownership interest in the property.

¶7. We do not disagree with Joshua's contention that "[t]here must be unity of title, time, interest[,] and possession in a joint tenancy." *Thornhill v. Chapman*, 748 So. 2d 819, 828 (¶30) (Miss. Ct. App. 1999). The question here is, did the joint tenancy convert to a tenancy in common at the time that Brenda filed her suit to partite the property, vesting her interest in the property and eliminating the right-of-survivorship provision? We find that it did not. This Court has held:

> [T]he distinguishing characteristic of a joint tenancy is the right of survivorship. By virtue of survivorship, the property descends outside of probate from the deceased joint tenant to the surviving joint tenant. The requirements for the creation of a joint tenancy with right of survivorship in land are governed by statute. Ownership of the whole and then taking the whole by survivorship are the outstanding features of owning property as joint tenants. The decedent's share does not have to pass to the survivor because the survivor already owns the whole. The usefulness of the joint tenancy as one property-law expert explained is that it serves as a "poor man's probate."

> With the above said about joint tenancy and its feature of survivorship, one point becomes clear about this case: [Carolyn] Jones owned the whole along with [Anthony] Graphia while they were joint owners. However, when Graphia filed to partite the property, as joint tenants are allowed to do, then Jones's interest was subject to division by the chancellor. Prior to the chancery proceeding, Jones enjoyed the ownership of the whole. Jones lost this

4

enjoyment when Graphia, her joint tenant, filed for partition. *Had Graphia died, Jones, as the only other joint owner, would have owned the whole by herself.* But since there was no death, the joint tenants had to give testimony during the partition hearing concerning their contributions to buying the house.

*Jones*, 95 So. 3d at 753-54 (¶¶7-8) (emphasis added) (footnote and citations omitted). Appropriately, the court in *Jones* ruled that upon the death of one joint tenant, the right of survivorship automatically transfers the whole property to the surviving joint tenant.

¶8. Joshua, in an attempt to distinguish *Jones*, argues that "[i]f Jones enjoyed ownership of the whole prior to the proceeding and lost this enjoyment when Graphia filed, then her death afterward would be at a time after she lost this enjoyment." We disagree. The filing of Brenda's complaint had no effect on the status of the property as a joint tenancy. At that point, no rights had been *lost,* but became merely *subject to loss* depending on the trial and the chancellor's ultimate ruling. If Joshua's analysis were the rule of law, all a party would have to do is *file* a complaint to partite to convert the property from a joint tenancy to a tenancy in common and defeat the right of survivorship, effectively rendering the court's ultimate disposition of the case futile.

¶9. Although merely persuasive, the Michigan Supreme Court addressed this very issue in *Jackson v. Estate of Green*, 771 N.W.2d 675, 677 (Mich. 2009), as follows:

> A party can sever a joint tenancy by compelling a partition. Until an order of partition has been entered, however, a partition has not been compelled and, thus, the joint tenancy has not been severed. *See* Anno: *What acts by one or more of joint tenants will sever or terminate the tenancy . . .* (explaining that "[i]t is not the filing of the partition action which terminates the joint tenancy, but only the judgment in such action which has that effect").

> Indeed, the universal rule in the United States is that a pending suit for partition does not survive the death of one of the joint tenants. *See Heintz v.*

5

> *Hudkins*, 824 S.W.2d 139, 142-143 (Mo. [Ct.] App. 1992), and cases cited therein. This rule is based on two related concepts: First, the theory of survivorship—that at the moment of death, ownership vests exclusively in the surviving joint tenant or tenants—and second, the doctrine that severance of the joint tenancy does not occur until the partition suit reaches final judgment.

For clarity, at the time that Brenda filed her complaint, the joint tenancy was still intact, and when she died, the property automatically transferred to Richard through the right of survivorship. There had been no final order issued at the time of her death, so the tenancy was never severed.

## II. Ad Valorem Taxes

¶10. Joshua argues that Brenda's estate is entitled to a reimbursement of ad valorem taxes paid on the property from 2008-2012. The record reflects that the property was sold for taxes for each of the years in question, that Brenda redeemed it from the tax sale for two of those years, and that Nancy redeemed it from the tax sale for the other three years. Later, Nancy assigned to Brenda's estate her rights to reimbursement of the payments that she had made. Brenda's deposition was also read into the record, in which she testified that she had paid some of the taxes. Richard admitted at trial that he did not make the payments. The chancellor noted in her order that since Richard "failed to answer the [c]omplaint in this matter, a [d]efault [j]udgment was also entered . . . [and] the [c]omplaint and all of the allegations were taken as admitted and confessed except the [c]ourt shall determine all questions of law." The chancellor did not discuss the issue of the taxes in her final judgment or in her denial of Joshua's motion for reconsideration.

¶11. Joshua does not cite any authority to support his proposition—that the estate is entitled

to a reimbursement of those payments. "Pursuant to Mississippi Rule of Appellate Procedure 28(a)([7]), an appellant's brief must contain . . . citations to the authorities, statutes, and parts of the record relied on. [F]ailure to cite any authority is a procedural bar, and a reviewing court is under no obligation to consider the assignment." *In re Estate of Forrest*, 165 So. 3d 548, 550 (¶7) (Miss. Ct. App. 2015). As such, we decline to address this issue any further. For the reasons discussed, we find no error in the judgment rendered by the chancery court.

¶12. **AFFIRMED.**

**LEE, C.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**