**Staunton.**

HULVEY AND OTHERS v. HULVEY AND OTHERS.

OCTOBER 8, 1895.

1. DEED FROM GRANTOR WHO HAS NO TITLE—*Color of Title—Adverse Possession.*—Although a deed of conveyance of real estate from a grantor who has no title conveys no title to the grantee, yet it is color of title, and possession taken under it and held adversely for the statutory period will ripen into a good title.

2. POSSESSION OF LAND BY WIDOW BEFORE ASSIGNMENT OF DOWER—*Interest in Land.*—The interest of a widow in the real estate of her deceased husband, before assignment of dower, is an interest for which she may maintain an action of ejectment, or an action of unlawful detainer, and possession taken or continued by her, as widow, is in privity with the heirs or devisees of her husband.

3. ADVERSARY POSSESSION—*Privity with Opposing Claimant.*—In questions of adverse possession a higher degree of proof is required where the possession was begun in privity with the opposing claimant than where no such relation existed. Where the possession was originally in privity with the adverse claimant there must be a clear, positive, and continuous disclaimer and disavowal of the title, and the assertion of an adverse right brought home to the adverse claimant. The possession must become tortious and unlawful by the disloyal acts of the party in possession, so open, notorious, and continued as to show fully and clearly the changed character of his possession, and knowledge thereof to the adverse claimant. Exclusive possession, receipt of profits, payment of taxes, making repairs, and getting firewood are not of themselves sufficient proof of an adverse holding.

4. ADVERSARY POSSESSION—*Privies—Accepting and Recording Deed from One Who Has No Title—Notice.*—Where one is in possession of land in privity with another, the taking and recording by the party in possession of a deed to the land from one who has no title does not affect the rights of the other party until he has actual notice thereof. No one is required to watch the clerk's office to guard against the acquisition of such rights.

Appeal from a decree of the Circuit Court of Rockingham county, pronounced April 19, 1893, in a suit in chancery wherein appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The tract of land in controversy was conveyed to John Hulvey, Sr., by Isaac Weanig and wife, by deed bearing date August 4, 1849, recorded December 28, 1849. The same land was conveyed to Melvina Hulvey (widow of John Hulvey, Sr.,) for life, with remainder in fee to George Custer and John Hulvey (son of John Hulvey, Sr.,) by Jacob Minnick, by deed bearing date June 20, 1874. The record does not disclose when, if at all, this deed was recorded, though the pleadings deal with it as if promptly recorded, and this was probably a conceded point. The other facts sufficiently appear in the opinion.

*O. B. Roller & Martz*, for the appellants.

*John E. Roller*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

In the year 1849 John Hulvey, Sr., purchased a tract of seventy-one acres of land, lying in Rockingham county, received a conveyance therefor, which was duly recorded, and took and held possession of the land from that time until the year 1872, when he died intestate, leaving a widow and ten children.

His widow, who was his second wife, and his only son by that marriage, continued in possession of the land after her husband's death. In the year 1874 Jacob Minnick made a conveyance of the same land to the widow for life, with

remainder to her two sons, (one the son of John Hulvey, Sr., and the other a son by a former marriage,) which was duly recorded.

In the year 1891 five of the heirs of John Hulvey, Sr., filed their bill in the Circuit Court of Rockingham county against his other heirs, his widow, and her son by a former marriage, for the purpose of having dower assigned to the widow, and the lands partitioned in kind, or by sale among his heirs.

To this bill the widow, her son John Hulvey, and her son George Custer filed their answer, claiming that the legal title to the land was vested in them by the deed from Minnick, or, at all events, it gave them color of title; and that, inasmuch as they had, since the date of that deed, held continuous, uninterrupted, open, and notorious adverse possession of the land, that color of title had ripened into a good and indefeasible title, both in law and in equity; and they therefore pleaded the statute of limitations as a bar to the suit. This answer was replied to, an account was ordered, and depositions taken, but before the account was taken the parties, by counsel, agreed to submit the cause upon the pleadings, depositions, and exhibits, upon the legal questions raised in the answer of the defendants, Melvina Hulvey, the widow, and her two sons.

The Circuit Court, upon a hearing of the cause, was of opinion that the statute of limitations was a good defence, and dismissed the bill.

From that decree this appeal was allowed.

The first question raised by the answer is whether the conveyance from Jacob Minnick to Melvina Hulvey, the widow, for life, with remainder to her two sons, vested the legal title in them.

There is nothing in the record that tends to show that Jacob Minnick had title to, or any interest in, the land. He made the conveyance referred to, with covenants of special war-

ranty, for the nominal consideration of one dollar, but in fact without any consideration whatever, as is admitted by Mrs. Hulvey, the widow, in her deposition. To make out their claim that the deed of Minnick vested the widow and her two sons with the legal title, it was necessary for them to show that Minnick had the legal title when he made the deed to them. This they wholly failed to do.

Having failed to show that they were invested with the legal title by Minnick, the next question is, did they show such adverse possession as made good their plea of the statute of limitations?

Although the deed of Jacob Minnick did not confer any title upon his grantees, it was color of title; and, if they had taken possession under it, and held adversely for the statutory period, it would have ripened into a good title. The great preponderance of evidence shows that George Custer, one of the grantees, never had any possession of the land, but that the widow and her son, John Hulvey, had possession of it from the death of John Hulvey, Sr., until the institution of this suit. It is not controverted that from the date of the death of John Hulvey, Sr., in the year 1872, until the year 1874, when the Minnick deed was made, the widow and her son, John Hulvey, were in the possession of the land, as his widow and his heir. Whether or not, under our statute, the widow's interest in her husband's lands before her dower is assigned be that of a tenant in common, as is held in some States, or not, it is an interest for which she can maintain an action of ejectment, or an action of unlawful detainer, and is, therefore, an interest in the land; and, when she has taken possession, or continues in possession, of the land as widow, her possession is in privity with the heirs or devisees of her husband. She and her son having gone into possession of the land in privity with the heirs of John Hulvey, Sr., and in subordination to his title, when did they change the character of their possession, if at all, so as to make it adverse?

In questions of adverse possession a higher degree of proof is required in those cases in which the possession was begun in privity with the opposing claimant than in cases where no such relation existed. Where possession is originally taken and held in subserviency to, or in privity with, the title of the adverse claimant, a clear, positive, and continued disclaimer and disavowal of the title, and an assertion of an adverse right brought home to the adverse claimant, are indispensable before any foundation can be laid for the operation of the statute of limitations. If this were not so, the greatest injustice might be done. Without such knowledge, the adverse claimant has the right to rely upon the fiduciary relations under which the possession was originally taken and held.

In such cases the statute of limitations does not begin to run until the possession, before consistent with the title of the adverse claimant, becomes tortious and wrongful by the disloyal acts of the party in possession, which must be so open, notorious, and continued as will fully and clearly show the changed character of his possession, and knowledge of such change on the part of the adverse claimant. 2 Minor's Inst. 579 (4th ed.); *Zeller's Lessee* v. *Eckert,* 4 How. 289; *Stonestreet* v. *Doyle,* 75 Va. 346; *Pillow* v. *Southwest Virginia Imp. Co.,* (decided at this term of the court,) *ante* p. 144; Newell on Ejectment, page 767.

The record shows that the widow and her son, John Hulvey, have been in exclusive possession of the land since the death of John Hulvey, Sr., taking the issues and profits, which were insufficient to support the widow, paying the taxes, keeping up the fences, and getting timber for the fencing and for fire-wood therefrom. These acts are not sufficient in themselves to show that their holding was adverse. *Lagorio* v. *Dozier,* 91 Va. 492; 1 Washburn on Real Prop. 566-7 (3d ed.)

But it is contended that the taking and recording of the

Opinion.

deed from Jacob Minnick in 1874 changed the character of their holding, and that this fact, taken in connection with the manner in which they have since held, is sufficient to show an adverse holding, and to give notice to the other heirs of John Hulvey, Sr., that they were no longer holding as widow and heir, but as grantees of Jacob Minnick.

The manner in which they held and used the land was the same after the execution of that deed as it was before the deed was executed, until recently, when they sold and removed the timber therefrom in large quantities. The taking and registering of the deed from Minnick at a time when they were in possession in privity with the other heirs of John Hulvey, Sr., could not affect the rights of the latter until they had actual notice thereof. No one is required to watch the clerk's office to see that those in possession of property in privity with him, or in subordination to his title, are not acquiring rights adverse to him. So far as the record shows, none of the heirs of John Hulvey, Sr., had any such notice of the deed, except George Hulvey, who obtained it within five or six years before this suit was brought.

Upon the whole case, we are of opinion that whilst the evidence shows that the widow and her son, John Hulvey, when they took the deed from Jacob Minnick, may have intended to change the character of their possession, and thereafter hold adversely to the heirs of John Hulvey, Sr., and not in privity with them, it fails to show that such intention was brought home to the other heirs with that degree of certainty which the law requires in such cases, more than fifteen years before the institution of this suit.

We are of opinion, therefore, that the appellants have the right to have dower assigned to the widow of John Hulvey, Sr., and the land partitioned among his heirs.

The decree appealed from must be reversed, and the case remanded to the Circuit Court, there to be proceeded with in accordance with this opinion.              *Reversed.*