VANZANDT, et al. *v.* VANZANDT, et al.

No. 39968          March 5, 1956          85 So. 2d 792

*E. L. & W. W. Dent,* Collins; *Hedgepeth, Ewing & Hedgepeth,* Jackson, for appellants.

*James B. Sykes,* Mendenhall; *Satterfield, Shell, Williams & Buford,* Jackson, for appellees.

LEE, J.

The bill of complaint of H. M. Vanzandt and seven others, representing a seven-tenths interest in the estate of E. M. Vanzandt, Sr., deceased, sought a partition of 320 acres of land, as therein described. J. C., G. C. and Dr. Homer Vanzandt, representing a three-tenths interest, were made parties defendant. The complainants and the defendants are all of the heirs at law of the decedent.

The answer of the defendants and the cross bill by J. C. Vanzandt set up that 80 acres of this land, as therein described, passed to J. C. Vanzandt under the terms of his mother's will, and that he had acquired title thereto by adverse possession for more than 10 years; and that the residue of 240 acres should be partited in kind.

The issues to be determined, under the pleadings, were whether or not J. C. Vanzandt had acquired title to the 80 acres, and whether or not the land was susceptible of division in kind, or whether it should be sold and the proceeds from such sale divided.

The proof showed that E. M. Vanzandt, Sr., died testate in January 1922. His surviving heirs at law were his widow and eleven children. One of the children, Melvin, died without issue subsequent to the death of his father. The testator, at the time of his death, owned the 320 acres in question. The will devised the land to his widow for life, with remainder to his children, share and share alike.

Mrs. L. A. Vanzandt, the widow, died testate in 1936; and her will was probated in common form on November 27, 1936. The instrument devised the 80 acres of land in question to J. C. Vanzandt.

The proof further showed that J. C. Vanzandt has lived in the home on this 80 acres practically all of his

life. Following his father's death, he lived with his mother and cared for her until her death. After her death he continued to live on the place for the past 18 years. Among the acts of ownership, which he claimed that he had exercised over the land during that period are the following: (1) He cleared new ground for crops and cultivated the land. (2) He appropriated all crops, rents and profits to his own use. (3) He built fences and erected permanent improvements. (4) He paid all taxes. (5) He claimed a homestead exemption thereon. (6) He was registered with a government agency as the owner and operator and received certain government benefits thereunder. (7) He executed a power of attorney to another, which was recorded March 2, 1943, to sell timber on the land. (8) He executed a mineral lease on the land, which was filed for record on April 28, 1944. The power of attorney and mineral lease were of record more than 10 years before the filing of the bill on August 3, 1954.

J. C., G.C. and Dr. Homer Vanzandt testified that all of the complainants knew about their mother's will, wherein she devised the 80 acres to J. C.; that they knew of the nature of J. C.'s possession; and that they knew that he was claiming the land, under his mother's will, adversely to them.

For the complainants, Mrs. Georgia Vanzandt, Hooker M. Vanzandt, Mrs. Hooker M. Vanzandt, E. M. Vanzandt, Albert McQueen and Mrs. Mary Basset testified that they knew nothing of the mother's will; that they had never had any actual knowledge from J. C. that he was claiming the land against them; and that they had never heard of such a claim. Three of the complainants did not testify.

■■ ■ The proof was ample to warrant a finding that J. C., following his mother's death, continued to do acts of the same nature in connection with this land as he had done before his father's death and which he

had also done during the lifetime of his mother; and that there was no substantial change insofar as the outward possession of the place was concerned.

Nichols v. Gaddis & McLaurin, (Miss.) 75 So. 2d 625, is decisive of the question. In that case the deed of trust from J. N. Nichols and wife, owners of an undivided interest in the property, conveyed title to the trustee without limitation. The trustee's deed was of record. The map of the county showed the claim of ownership by Gaddis & McLaurin. They had also paid all taxes. They leased the land to J. W. Nichols, a son of J. N. Nichols, and paid the rent to them. Approximately 19 years elapsed from the foreclosure on March 7, 1932, until the institution of the suit. Yet, except for those as to whom notice was actual, or the equivalent, this Court held that Gaddis & McLaurin had not, under the circumstances, acquired title. The opinion said: "Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant in common. In the present case, before the foreclosure in 1932 James W. Nichols was in possession of the property as a tenant in common. In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either 'from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto', as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed." It is also there said that "Clear and convincing evidence is essential to support an ouster by a cotenant * * *." The principles laid down in that case, and the authorities there cited, govern here.

■■ ■ The appellants contend that, in view of the testimony of the defendants, all of the heirs had actual notice of J. C.'s claim, and since three of the appellees did not testify to controvert that evidence, these three at least have lost their interests to him.

But the defendants testified that all of the complainants knew about J. C.'s claim. Five of the complainants testified that they had never heard of it. The chancellor must have believed the evidence of the complainants. Since he evidently did so, he of course rejected the evidence of the defendants in that regard; and, having rejected it in that instance, he was warranted in believing that such notice was not conveyed to the other three complainants.

The probated will of E. M. Vanzandt, Sr. vested in his widow a mere life estate. His heirs, even if they knew that the widow had made a will, could assume that she did not undertake to devise more title than she held. Besides, the will was probated in common form and the heirs were not, therefore, required by process to interpose objections, if any, thereto. If claims were probated against her estate, these lands could not have been sold to enforce payment—her estate in the lands expired when she died. Consequently the case of Federal Land Bank v. Newsom, 175 Miss. 114, 161 So. 864, is not in point.

■■ The appellants' evidence that J. C. Vanzandt was reputed to be the owner was properly excluded because it was based on what J. C. said and not on general reputation.

■■ Under the answer and evidence of G. C. and Dr. Homer Vanzandt, J. C. has acquired their interests.

■■ It can not be justly said from the evidence before the Court that the chancellor was manifestly wrong in denying partition in kind.

Due consideration has been given to every assignment of the appellants. No reversible error appears in the record, and the cause is affirmed.

Affirmed.

*McGehee, C. J.* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.