193 So.2d 549 (1966)
Giannini GUISEPPE et al.
v.
Anthony COZZANI et al.
No. 44050.
Supreme Court of Mississippi.
November 7, 1966.
Suggestion of Error Overruled January 16, 1967.
George Piazza, New Orleans, La., Oscar P. LaBarre, Vicksburg, for appellants.
Vollor & Thames, Vicksburg, for appellees.
ROBERTSON, Justice:
This is the third appearance of this case before this Court. On its first appearance, the trial court had sustained a general demurrer to the amended bill of complaint. This Court reversed the judgment of the trial court and remanded the cause for a trial on the merits. 238 Miss. 273, 118 So.2d 189 (1960). On its second appearance, the trial court had dismissed the amended bill of complaint because there had been a long delay in getting the case to trial and on the day set for trial, the complainants still had not succeeded in getting the evidence needed from Italy. This Court again reversed the judgment of the trial court and remanded this cause for a trial on the merits. 248 Miss. 588, 159 So.2d 278 (1964).
After a trial on the merits, the trial court dismissed the amended bill of complaint and found for the defendants. We reverse the judgment of the trial court and remand this cause for an adjudication of the fractional ownership of each complainant and defendant in the real property of Frank Toney, deceased; and for an accounting of the net proceeds of sales and rentals of the real property from February 8, 1933, to date.
*550 Frank Toney, also known as Toni Francesco Giov. Battista, came to this country from Italy some years before 1896. He settled in Warren County, Mississippi, and accumulated some real and personal property there. He went to Italy for a visit in the summer of 1896 and returned to Vicksburg, Mississippi, in October of 1896. He brought with him from Italy his niece, Mary Cozzani, her husband, Dominic Cozzani, their young daughter and a 5 year old son, O.A. Cozzani.
Frank Toney died on December 26, 1896, at his residence in Warren County, Mississippi, leaving a Last Will and Testament as follows:
"I, Frank Toney of the County of Warren & State of Mississippi being of sound mind good memory and understanding do make publish and declare this my last will and testament.
"I give to my nephew Dominic Gonzani and his wife Mary Gonzani the sum of One Hundred and twenty five ($125.00) Dollars each. This amount to be paid to them as soon after my death as this will can be proven and the amount can be conveniently raised from my estate.
"I will and desire that the balance of my estate both real and personal shall go to my wife Emma Toney for life; and at her death such of the same as has not been consumed shall go to my nephews and nieces share and share alike, and to my sister Lucretia she to take an equal share with them.
"I appoint my wife Emma Toney as my Executrix, without bond as such.
"Witness my signature this the 26th day of Dec. 1896.
 "His
 Frank x Toney
 Mark
"Witnesses:
N. Piazza
F. Piazza
H.C. McCabe"
His widow, Emma Toney, filed his will for probate on January 14, 1897, and was appointed executrix in accordance with the provisions of the will.
Some time later, the widow married a person by the name of Ransome. As the life tenant, she took possession of Frank Toney's property. She died intestate on February 8, 1933, in Purvis, Mississippi. On April 8, 1933, O.A. Cozzani was appointed administrator of her estate by the Warren County Chancery Court after he had filed and sworn to a petition alleging, among other things:
"That, under the stipulations and conditions of said will above referred to, your petitioner's mother and father, to-wit: Dominic Cozzani, deceased, and Mary Cozzani, (the wife of Dominic Cozzani), of Warren County, Mississippi, being the Niece and Nephew of said Frank Toney, deceased, were to come into possession of all of the property of said Frank Toney, deceased, upon the death of the said Emma Toney Ransome, who, as stated above, died on the 8th day of February, A.D., 1933."
"* * *"
"Petitioner would further show unto the court that it appears that the said Emma Toney Ransome, during her life time, disposed of her life interest in said estate of Frank Toney, deceased, and that it is manifest that the intent of the last will and testament, herein referred to, in order that same may be carried out in keeping with the desires of the testator, vests in the mother of your petitioner aforesaid, and her heirs, sole ownership in the property of the la(s)te Frank Toney, deceased, it appearing that, upon the death of the said Emma Toney Ransome, they were to come into possesion of said property."

"* * *"
"Petitioner would further show unto the court that, in order for the said inheritors named in the last will and testament *551 of Frank Toney, deceased, herein referred to, to come into possession of any benefits that may be derived from said estate, he, your petitioner, should be appointed administrator of said estate, in order that the rights of said heirs may be properly protected; that he, as such administrator, be permitted to proceed in such legal manner as will enable the beneficiaries to come into possession of the property herein referred to." (Emphasis added.)
On September 11, 1934, O.A. Cozzani, administrator, signed and swore to a petition to close the estate of Emma Toney Ransome, alleging, in part, as follows:
"That, after due and diligent search and inquiry, petitioner has ascertained that said estate of Emma Toney Ransome, deceased, has no assets of any type, character or kind, and that, as a matter of fact, said estate consisted solely of real estate which had, through the last will and testament of Frank Toney, deceased been willed and bequeathed to Dominic Cozzani, (now deceased), and Mary Cozzani, (wife of Dominic Cozzani), the Niece and Nephew of the said Frank Toney, deceased; and to a sister, of said Frank Toney, deceased, said sister being designated in said will, above referred, as `Lucretia'; that, through and by said will hereinabove referred to, each of the above devisees were to share equally in said estate of the said Frank Toney, deceased; that the said sister, `Lucretia', died some time before the said will was probated, and that, in so far as your petitioner has been able to ascertain, after due and diligent search and inquiry, there are no living descendants of the said sister, `Lucretia', and that, therefore, no one, except those herein listed and enumerated, have any interest whatsoever in said estate.

"That the will of the said Frank Toney, deceased, or a copy thereof, has been filed as Exhibit A in this cause, and by reference hereto, is made a part of this petition, as though fully copied herein.
"Petitioner would further show unto the court that one of the devisees under the said last will and testament of the late Frank Toney, to-wit: Dominic Cozzani, is now deceased, and that he left surviving him, his widow, Mary Cozzani, (who is an inheritor under the last will and testament of the said Frank Toney, deceased), and the following children, to-wit: Esma Cozzani Garrett, Christina Cozzani Elliott, Tony Cozzani, and your petitioner, O.A. Cozzani, all of whom are adults.
"Petitioner would further show that the herein named inheritors, to-wit: Esma Cozzani Garrett, Christina Cozzani Elliott, Tony Cozzani, and your petitioner, O.A. Cozzani, have, by deed, transferred to Mrs. Mary Cozzani, their mother, all of their rights, title and interest in and to the real estate owned by the said Frank Toney, deceased, at the time of his death, and in which said real estate the said Emma Toney Ransome, deceased, had a life interest, and that, at this time, she, the said Mrs. Mary Cozzani, is the sole owner of the real estate herein referred to." (Emphasis added.)
Basing his decree on the sworn allegations of the said petition to close the estate, the Chancellor entered a decree on September 11, 1934, finding, in part, as follows:
"* * * and the Court being fully advised in the premises, is of the opinion that said estate of Emma Toney Ransome was disposed of through and by the will of Frank Toney, deceased; that said estate, at this time, has no real or personal property, and the court, after reviewing said will, which was filed with the papers herein, is of the opinion that the administrator, O.A. Cozzani, after the payment of all costs herein, and after the payment of a reasonable attorneys fee to Chaney & Culkin, his attorneys *552 of record, should be finally discharged, and that his accounting herein, and all actions on his part, should be approved by this Court." (Emphasis added.)
In 1934, Mary Cozzani, O.A. Cozzani, his brother and two sisters conveyed a parcel of land to Anderson-Tully. O.A. Cozzani handled the negotiations with Anderson-Tully. Later another parcel of the property was conveyed to Anderson-Tully. Another parcel of the property was sold to the railroad and an easement over part of the property to the gas company. These instruments were recorded in the Warren County Chancery Clerk's Office in Vicksburg. Mary Cozzani, the niece of Frank Toney and the mother of O.A. Cozzani, died in 1947 and her estate was administered in the Warren County Chancery Court.
Anthony Cozzani, a younger brother of O.A. Cozzani, took charge of the property on the death of his mother, Mary Cozzani, and collected rents and otherwise managed the property for the benefit of his brother, O.A. Cozzani, his two sisters and himself.
A cousin, Nina Fusca, wrote Anthony Cozzani from New York City on January 27, 1953, inquiring about Frank Toney and his estate. Anthony Cozzani did not answer that letter. On October 9, 1953, Nina Fusca again wrote Anthony Cozzani from New York City asking that he clarify the status of Frank Toney's estate and reiterated that some of the Italian relatives had inquired of her about his estate. Anthony Cozzani testified that he answered this letter, as follows:
"* * * My recollection is that I tried to tell them that they should have an investigation made over here, before a delegation came over, to determine what the property was worth, and I tried to explain to them that the value of the property was not what they thought it was.

"Q. You wrote her and told her exactly what property was left by the decedent?
"A. I don't recall if I told her exactly what property was left.
"Q. Well, she asked you for full information.
"A. I don't know whether I answered those questions explicitly." (Emphasis added.)
On November 12, 1958, a bill of complaint was filed praying that the complainants, being the heirs of nephews and nieces of Frank Toney, be adjudged to be the owners of interests in the property of Frank Toney, deceased, by virtue of the last will and testament of Frank Toney. The complainants prayed for an accounting by O.A. Cozzani, Anthony Cozzani and their sisters. An amended bill of complaint was filed on February 17, 1959, wherein the complainants again prayed that:
"* * * the property involved in this litigation be decreed to be held at all times by Mary Cozzani, and the defendants herein, in trust for the benefit of the complainants; that the beneficial interest and title therein be decreed to be in the complainants and Mrs. Mary Cozzani; * * *." (Emphasis added.)
Complainants again prayed for an accounting and a judgment over for their part of the net rentals and proceeds of sales of the properties, and the complainants offered to do equity in adjusting the rights of the parties in the said property.
We are of the opinion that the rights of the nephews and nieces and these complainants accrued as owners of vested remainder estates at the death of Frank Toney on December 26, 1896, and their rights to possession of the property accrued at the death of Emma Toney Ransome on February 8, 1933. The complainants are entitled to be recognized as tenants in common along with the defendants unless *553 there was an effective ouster of these complainants by Mary Cozzani and her sons and daughters, and unless these complainants are barred from bringing any action to assert their rights by the provisions of Section 710 of the Mississippi Code of 1942.
Frank Toney had just returned from Italy at the time of the making of his will. He knew he had nephews and nieces in the Old Country. He made specific bequests of $125.00 each to Dominic Cozzani and Mary Cozzani, and then he very clearly left the balance of his estate to his wife, Emma, for her life and the remainder at her death to his nephews and nieces and his sister, Lucretia, share and share alike.
Mississippi Code of 1942 section 518 says this, among other things:
"* * * the directions of the will shall be followed by the executor * * *."
In spite of this admonition, O.A. Cozzani, a well educated man, entered into a conspiracy to defraud his Italian relatives with his mother, Mary Cozzani. He made sworn fraudulent statements in his petition to be appointed administrator of the Estate of Emma Toney Ransome. These statements were calculated to and did mislead the Chancery Court of Warren County. After being appointed administrator and thus becoming an officer of the court, he made further sworn fraudulent statements on September 11, 1934, in his petition to close the Estate of Emma Toney Ransome. He stated under oath, among other things, that he had made due and diligent search and inquiry, and there were no living descendants of Frank Toney's sister, Lucretia. As a matter of fact, he had made no search or inquiry whatsoever and yet, Lucretia, just happened to be his grandmother and the mother of Mary Cozzani, O.A.'s mother. Mary Cozzani knew that when she came to this country in 1896 that she left a younger sister in Italy. O.A. Cozzani testified that he knew they came from LaSpezia, Italy, that he could speak Italian also, and that his mother, Mary Cozzani, could speak both Italian and broken English, yet there were no conversations between his mother and him about the country of their birth and relatives over there. His testimony on cross-examination was as follows:
"Q. Did you try to find out how many children Lucrezia Toni had?
"A. No, I did not.
"Q. Did you know if your mother had a sister by the name of Maria Adelaide Fregosi, married to Attilio Figoli?
"A. I did not.
"Q. You did not?
"A. No.
"Q. Did you make any effort to find out whether she had a sister?
"A. I did not. Why would I? Let me ask you a question  why would I, why would I make an effort?"
All of this brings to mind Sir Walter Scott's statement in "Marmion":
"Oh, what a tangled web we weave, when first we practice to deceive."
On the relationship of tenants in common and the question of ouster by a co-tenant, this Court in the case of Nichols v. Gaddis and McLaurin, Inc., 222 Miss. 207, 221-222, 75 So.2d 625, 629, 78 So.2d 471 (1954), had this to say:
"Because of the mutuality of their interests, possession and obligations, the relationship between cotenants is confidential and fiduciary in nature. Each has a duty to sustain, or at least not to assail, the common interest, and to sustain and protect the common title. It is a relationship of trust and confidence between co-owners of property, 86 C.J.S. Tenancy in Common § 17.
"* * * Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant in common.

*554 * * * In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either `from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto', as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed. * * * `The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So.2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.'" (Emphasis added.)
The recording of a fee simple deed by one co-tenant as notice of his adverse claim to other co-tenants was discussed by the Court in the Nichols case, supra, in these words:

"We do not think that the mere recording alone of a fee simple deed by a cotenant `imparts notice' to other cotenants of an adverse claim to land by the grantee-cotenant, and do not think that `this is as effectual for setting the statute in motion as actual notice would have been', as was held in Peeples. This ignores the nature of the relationship of tenants in common, and the fact that a tenant in common out of possession is entitled to assume that a cotenant in possession holds for all cotenants, until he is given knowledge to the contrary, or the equivalent thereof, which must be shown by clear and convincing evidence. As was said in Hulvey v. Hulvey, 1895, 92 Va. 182, 23 S.E. 233, 235. `No one is required to watch the clerk's office to see that those in possession of property in privity with him or in subordination to his title are not acquiring rights adverse to him.'" (Emphasis added.) 222 Miss. at 231, 75 So.2d at 633.
All of the nephews and nieces of Frank Toney, except Mary Cozzani, lived in the Republic of Italy, at the time of his death in 1896. They, thus, lived some 4,000 miles from the shores of the United States. They were uneducated people who knew nothing about the United States, its laws, its courts and its legal records. How could this Court or any court hold that these illiterate people, 4,000 miles away, were given actual notice or the equivalent thereof by the filing of pleadings and deeds in the Warren County Chancery Clerk's Office in Vicksburg, Mississippi?
As we said in Hulvey v. Hulvey, a Virginia case, quoted with approval by this Court in the Nichols case:
"No one is required to watch the clerk's office to see that those in possession of property in privity with him or in subordination to his title are not acquiring rights adverse to him." 222 Miss. at 231, 75 So.2d at 633.
We hold that there was concealed fraud practiced by O.A. Cozzani and his mother, Mary Cozzani, on the Warren County Chancery Court, by which the court was misled, and that there was concealed fraud practiced on these complainants, and that these complainants are not barred from maintaining this suit in equity by virtue of the provisions of the Mississippi Code of 1942 Annotated, Section 710.
The judgment of the lower court is reversed and this cause remanded for an adjudication of the ownership of the complainants and defendants in the remaining real properties of Frank Toney, deceased, and for an accounting of the net rentals and net proceeds of sales from those properties that have been leased or sold during the interim from 1933 to date.
Reversed and remanded.
ETHRIDGE, C.J., and JONES, PATTERSON and INZER, JJ., concur.