ROBERTSON, Justice.
The Appellants, William R. Barber, Harriet Barber Thorne and Harold R. Barber, appeal from a decree of the Chancery Court of Harrison County sustaining a motion to exclude and to find for the Defendants, Robert E. McManus and Marina M. Lati-mer, made at the close of the complainants’ case. After sustaining the motion to ex- *654 elude, the chancery court entered a decree dismissing the bill of complaint. The court also dismissed without prejudice the cross-bill of the defendants on their own motion.
The bill of complaint, after deraigning title, prayed for confirmation of the title of the appellants to an undivided one-half interest in the following described lands in Harrison County, Mississippi:
“The United States Government Lots 1 and 2 in Fractional Section 9, Township 8 South, Range 13 West.”
The bill of complaint alleged and the evidence showed that in 1925 said Lots 1 and 2 were conveyed by separate deeds by different grantors to W. R. Barber and E. McManus; that W. R. Barber died in 1928, leaving a last will and testament naming Harold R. Barber as Executor and devising his property to his wife, Matilda Galloway Barber.
Said Lots 1 and 2 were sold at a tax sale on September 21, 1932, for the unpaid 1931 county and state ad valorem taxes to E. Woleben, a sister of Eustis McManus, Harrison County chancery clerk and co-owner of the said lots. E. Woleben executed a quitclaim deed to Eustis McManus on January 29, 1936, even though she did not receive a tax deed to these lots from Eustis McManus, chancery clerk, until January 28, 1937.
Eustis McManus died testate in 1941, and the devisees under his will were his children, Robert E. McManus and Marina M. Latimer, the defendants in the court below and the appellees here. Mrs. Matilda Galloway Barber died in 1959, leaving all of her property to her three children, William R. Barber, Harriet Barber Thorne, and Harold R. Barber, the complainants in the court below and the appellants here.
The only witnesses were James A. Martin, a civil engineer and land surveyor, and Harold R. Barber, one of the appellants. Their testimony was that this 150 acres of land was low-lying marshland and tideland typical of the bayou country; that the land was wild, uncultivated and uninhabited; that there were no improvements and no structures of any kind on it; that there were no posted signs on the land, no evidence of timber cutting or reforestation, and no evidence of any possession of any kind whatsoever.
The answer and cross-bill of Defendants, Robert E. McManus and Mrs. Marina M. Latimer, set up that from January 28, 1937, until November 8, 1959, the date of the death of Mrs. Matilda Galloway Barber, neither Mrs. Barber nor her children, the appellants here, claimed any right, title, or interest in the property and that they were ousted from the land on January 28, 1937, by virtue of the execution of the tax deed on that date. The appellees further charged in their answer that Eustis McManus, their father, and they, since his death, had adversely claimed and possessed the said lands,
“have paid all legally assessed taxes and assessments, have leased, contracted, used and physically occupied said real estate, actually and constructively, have posted and protected it, have fished and trapped the marsh lands, have cut and sold timber therefrom, have protected it from fire and nurtured reforestation on said lands, and have thereby flown their flag of absolute adverse ownership against the Complainants and the whole world so that in law and in equity, these Defendants are the absolute exclusive owners in possession of said lands, real estate and property as described and all claims of Complainants to the contrary now asserted should be cancelled, annulled and held for naught and title confirmed and quieted in these Defendants.”
The bill of complaint was sworn to by William R. Barber and Harold R. Barber, two of the complainants, and the answer and cross-bill were sworn to by the two defendants, so the answer and cross-bill do not constitute evidence of any kind. § 1294 Miss.Code Annot. 1942. No evidence in support of their answer and cross- *655 bill was introduced by the defendants, they having moved to exclude and to find for the defendants at the close of the complainants’ case.
There is, therefore, no evidence in the record of the payment of taxes by the defendants, no evidence of any acts of ownership, and no evidence of any adverse possession. There is no evidence of ouster of the appellants or their late mother unless the mere recording of the quitclaim deed from E. Woleben to Eustis McManus in 1936 or the mere recording of the tax deed from Eustis McManus, chancery clerk, to E. Woleben in 1937 could be considered evidence of ouster.
This Court set forth the general rule with reference to the acquisition of a tax title by a co-owner in the case of Griggs v. Griggs, 218 Miss. 433, 441-442, 67 So.2d 450, 453 (1953), as follows:
“The authorities are uniform in affirming the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee, for it is generally agreed that when the common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common cannot by the purchase of such title assert it against his cotenants.’1 (Emphasis added.)
The latest case on the confidential and fiduciary relationship of tenants in common and the question of ouster by one of the cotenants of the other cotenants and co-owners was the case of Guiseppe v. Cozzani, 193 So.2d 549, 553-554 (Miss.1967), wherein we said:
“On the relationship of tenants in common and the question of ouster by a co-tenant, this Court in the case of Nichols v. Gaddis and McLaurin, Inc., 222 Miss. 207, 221-222, 75 So.2d 625, 629, 78 So.2d 471 (1954), had this to say:
“ ‘Because of the mutuality of their interests, possession and obligations, the relationship between cotenants is confidential and fiduciary in nature. Bach has a duty to sustain, or at least not to assail, the common interest, and to sustain and protect the common title. It is a relationship of trust and confidence between co-owners of property, 86 C.J.S. Tenancy in Common § 17.
“ * * Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is riot sufficient where entry was made as a tenant in common.
“ ‘ * * * jn order t0 establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either “from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto”, as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed. * * *
“The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So.2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual n'otice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.’”
“The recording of a fee simple deed by one co-tenant as notice of his adverse claim to other co-tenants was discussed *656 by the Court in the Nichols case, supra, in these words:
“ ‘We do not think that the mere recording alone of a fee simple deed by a cotenant “imparts notice” to other co-tenants of an adverse claim to land by the grantee-cotenant, and do not think that “this is as effectual for setting the statute in motion as actual notice would have been”, as was held in Peeples. This ignores the nature of the relationship of tenants in common, and the fact that a tenant in common out of possession is entitled to assume that a cotenant in possession holds for all cotenants, until he is given knowledge to the contrary, or the equivalent thereof, which must be shown by clear and convincing evidence. As was said in Hulvey v. Hulvey, 1895, 92 Va. 182, 23 S.E. 233, 235. “No one is required to watch the clerk’s office to see that those in possession of property in privity with him or in subordination to his title are not acquiring rights adverse to him.” ’ (Emphasis added.) 222 Miss. at 231, 75 So.2d at 633.”
The fact that Harold R. Barber as Notary Public took the acknowledgment of Eustis McManus, chancery clerk, to the tax .deed to E. Woleben on January 28, 1937, would not constitute notice of an adverse claim to the property of Barber’s mother. After all, a quitclaim deed from E. Woleben to E. McManus (co-owner) had already been executed a year before the execution of the tax deed.
The lower court was in error in sustaining the motion to exclude and dismiss the bill of complaint, which motion was made at the close of the complainants’ case.
The judgment is, therefore, reversed and the cause remanded for a full hearing.
ETHRIDGE, C. J., and JONES, BRADY and INZER, JJ., concur.