RODGERS, Justice.
This is a suit filed by Denver T. John-stone in the Chancery Court of Pike County, Mississippi, on January 12, 1967, to establish his claim to an undivided one-ninth interest in 112 acres of land. He named as defendants in his bill of complaint: Earl Johnson, Mrs. Verta Lee Johnson, Enoch J. Williams, Mrs. Mayme Melton Williams, The Mississippi State Highway Commission, J. Willis Hughes, Sun Oil Company, Reading and Bates, Inc., A. E. Andrews, John D. Noble and Marvin E. Douglas.
The petitioner bases his claim upon the following facts. W. F. Johnson, the father of defendant, Earl Johnson, died intestate on or about August 27, 1929. He was the recorded owner of the property here involved. He left as his sole heirs at law, his widow, Mrs. Cora Schilling Johnson, Mrs. Susie Opal Johnson Herbez, N. E. Johnson, Mrs. Jewell Johnson Rawls, Mrs. Annie Pearl Johnson Berryhill, J. R. Johnson, Mrs. Ruby Elizabeth Johnson Miller and Earl Johnson, and, as is claimed, their half-brother, the complainant, Denver T. Johnstone.
On February 4, 1943, Mrs. W. F. Johnson, Mrs. Susie Opal Johnson Herbez, N. E. Johnson, Mrs. Jewell Johnson Rawls, Annie Pearl Johnson Berryhill, J. R. Johnson and Mrs. Ruby Johnson Miller gave a warranty deed to Earl Johnson to (their) “our interest” in the land. They stated in the deed that grantors with grantees were the sole heirs of W. F. Johnson, deceased. This deed was filed of record on March 11, 1944.
*446 After February 4, 1943, Mrs. Cora Schilling Johnson died intestate, leaving as her sole heirs, the half-brothers and sisters of the complainant. Thereafter, N. E. Johnson died intestate, leaving as his heirs, his widow, Mrs. Eva Mae Wilkinson Johnson, and his children, Julius N. Johnson, Mrs. Wonzie Johnson Hudspeath, Clyde Earl Johnson and Marcelle Johnson.
On October 13, 1960, the 1943 deed was corrected by a deed from the above brothers and sisters conveying “their entire undivided interest” to the oil, gas and minerals, but reserving their undivided interest in oil and gas royalties. This instrument was filed of record on October 14, 1960.
The original bill alleged that the appel-lees, Earl Johnson and his wife, sold part of the land here involved to the Mississippi State Highway Commission. The deed was recorded on October 1, 1957. They also sold some of the land to Enoch J. Williams and his wife. This deed was recorded on August 4, 1958. On February 27, 1959, they executed an oil, gas and mineral lease to J. Willis Hughes. All of these deeds were within ten years next before the suit here involved was filed on January 12, 1967.
On November 17, 1960, Julius N. Johnson, Mrs. E. A. Hudspeath and two minors, Clyde Earl Johnson and Marcelle Johnson, by their mother and guardian, deeded by special warranty their entire interest in all oil, gas and minerals in the land to Earl Johnson.
There are various other conveyances shown of record, not necessary to be set out for the purpose of this opinion, and are only of interest here to show the activity on the land record with reference to this property.
The Mississippi State Highway Commission filed a demurrer which alleged the statute of limitations (Section 8038.1 Mississippi Code 1942 Annotated [1956]) as a defense. Earl Johnson and wife, Verta Lee Johnson, filed a general and special demurrer to the original bill. Enoch J. Williams and Mrs. Mayme Melton Williams filed a motion asking the court to strike out of the bill certain lands not a part of the 112 acres claimed by the complainant. Sun Oil Company, J. Willis Hughes, Reading and Bates, Inc., A. E. Andrews, John D. Noble and Marvin E. Douglas filed an answer in which they advised the court that they also have a lease from Denver Johnstone and are not interested in the litigation between the complainant and his half-brother and other named defendants. They hold the one-ninth of one-eighth interest in the royalty for disposition as directed by the court.
The chancellor sustained the demurrer filed by Enoch J. Williams and Mayme Melton Williams. The general demurrer filed by Earl Johnson and wife, Verta Lee Johnson, was also sustained. The motion to strike made by Enoch J. Williams and Mayme Melton Williams was overruled. The demurrer of the Mississippi State Highway Commission was overruled. The complainant amended his bill so as to add the names of parties to the suit who had an interest in the land but were not named as defendants in the original bill of complaint.
The Mississippi State Highway Commission answered setting up the statute of limitations (Section 8038.1 Mississippi Code 1942 Annotated [1956]) and denied the heirship of the complainant. Enoch J. Williams and Mayme Melton Williams filed their answer denying the claim of complainant. Earl Johnson, his wife and his brother and sisters, or their surviving heirs, answered the original bill of complaint denying the relationship of the complainant to defendants or, in the alternative, alleging that he was estopped to claim any interest in the land here involved, and alleging adverse possession of the land by Mrs. W. F. Johnson and her children for a period of 33 years.
The chancellor heard the testimony and observed the documentary evidence of deeds, letters and photographs and reached the conclusion that the complainant, Den *447 ver T. Johnstone, was in fact the legitimate son of W. F. Johnson and his first wife, Lula Smith Johnson. He was, therefore, the half-brother of the children of W. F. Johnson and his second wife, Mrs. Cora Schilling Johnson. The chancellor then held, however, that the complainant had been ousted by the activity of the defendants in the use of the land so that the statute of limitations had run against the claim of the complainant to any interest in the property belonging to his father.
The evidence in this case leaves little room to doubt that the complainant is, in fact, the legitimate son of W. F. Johnson and his first wife, Lula Smith Johnson. Any other conclusion would be against the overwhelming weight of the evidence, as well as the admissions of complainant’s half-sister. It is difficult to distinguish one brother from another in the picture of the family reunion filed as an exhibit to the testimony.
The second question of an ouster is a question of facts as developed under the applicable law of ouster of cotenants. The record shows that W. F. Johnson and Lula Smith Johnson were duly married in March 1898 and that the complainant was born to them on November 3, 1898, but that thereafter they were divorced in 1901. The complainant grew up in McComb, Pike County, Mississippi. He lived with his mother and grandparents. He obtained employment as a delivery boy and had other odd jobs until he was old enough to work for the Illinois Central Railroad. He left McComb about 1916 or 1917. He came back to visit in 1928, but did not return again until 1938. His next visit was in May 1940. On this visit, for the first time he met his half-sister, Mrs. Susie Opal Johnson Herbez. He returned in July 1940 and, on this visit, he met several of his half-brothers and sisters. He later met all of them. After 1940 Mr. John-stone made several visits to see his half-brothers and sisters, and sometimes he stayed with Mr. Earl Johnson. The evidence is in conflict as to how much, if any, the property was discussed. Complainant denied that he offered to buy part of the land from Mr. Earl Johnson. There is testimony that complainant went hunting on the land and complainant knew that his grandfather owned some land in the area of the land here involved.
The record shows that Mr. Earl Johnson, on February 4, 1943, obtained a deed from his whole brothers and sisters to the land involved purporting to convey their surface interest in the land, but he did not obtain a deed conveying the entire interest in the land until October 13, 1960, at which time his whole brother, sisters and the wife and children of his deceased brother made a deed to him covering their entire interest in the land but reserved their interest in the oil, gas and mineral royalties.
After Earl Johnson obtained the first deed he performed the acts usually performed by owners of property. He improved the property. At first he “row cropped” part of the land, but along in 1946 he began to establish improved pastures. He built fences, straightened the creek run, built ponds, built a barn, posted the land, and did considerable dirt fill and grade work. He claimed homestead exemption on the property and carried comprehensive insurance in his own name on his home located on the property after he moved on the property.
From the foregoing facts, the chancellor determined that there had been an ouster. He said: “Mr. Earl Johnson’s acts here were unequivalent and * * * he (Denver Johnstone) is barred by the statute of limitations.” The chancellor based his conclusions upon the facts set out in Reed v. Bales, 240 Miss. 592, 128 So.2d 374 (1961), which will be discussed later. But, first, it is imperative to remember the rule of ouster in this state as between cotenants.
In the case of Gavin v.- Hosey, 230 So.2d 570 (Miss. 1970), we examined the cases previously decided by this Court and repeated the often quoted rule:
“ * * * The rules for testing the question of ouster were stated in Nichols *448 v. Gaddis & McLaurin, Inc., supra, in these words [222 Miss. 207, 75 So.2d (625), 629]: ‘An ouster cannot be proved merely by acts which are consistent with an honest intent to acknowledge the rights of the cotenant. It does not necessarily imply an act accompanied by force. Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant in common. * * * In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either “from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto”, as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed. Hurst v. J. M. Griffin & Sons, Inc., 1950, 209 Miss. 381, 46 So.2d 440, 442, 47 So.2d 811. The Hurst case further holds: “The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So.2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.” ’ ” * * * (230 So.2d at 573)
The foregoing rule is firmly established in this state. See: Barber v. McManus, 205 So.2d 653 (Miss.1968); Guiseppe v. Cozzani, 193 So.2d 549 (Miss.1966); Bush v. Quinn, 236 Miss. 895, 112 So.2d 231 (1959); Wilder v. Currie, 231 Miss. 461, 95 So.2d 563, 97 So.2d 384 (1957); Anderson v. Boyd, 229 Miss. 596, 91 So.2d 537 (1956); Vanzandt v. Vanzandt, 227 Miss. 133, 85 So.2d 792 (1956); Bonds v. Bonds, 226 Miss. 348, 84 So.2d 397 (1956); Nichols v. Gaddis & McLaurin, Inc., 222 Miss. 207, 75 So.2d 625 (1954); Smith v. Smith, 211 Miss. 481, 52 So.2d 1 (1951); Quaries v. Quarles, 210 Miss. 493, 49 So.2d 810 (1951); Hurst v. J. M. Griffin & Sons, Inc., 209 Miss. 381, 46 So.2d 440, 47 So.2d 811 (1950).
In the recent case of Quates v. Griffin, 239 So.2d 803 (Miss. 1970), we re-examined the cotenancy rule, and in an opinion upon petition for rehearing, we modified the rule expressed in Nichols v. Gaddis & McLaurin, Inc., supra, as to a “stranger” who obtained title to land from a cotenant in a deed purporting to convey the entire property. We modified the rule expressed in Peeples v. Boykin, 132 Miss. 359, 96 So. 177 (1923). The Quates case, supra, did not, however, change the rule above expressed as to ouster between relative cotenants who are not strangers to the title.
In order to establish whether or not an ouster has occurred against a cotenant followed by sufficient time of ten years adverse possession (Section 711 Mississippi Code 1942 Annotated [1956]), it is obviously necessary to establish a date when ouster can be said to have occurred. Otherwise, we cannot determine when the adverse possession statute began to run and thus we are unable to pass title by adverse possession.
It must be remembered that it is not sufficient to show acts of hostile possession which in ordinary cases would constitute an adverse possession claimed against a stranger. The possessing cotenant must show actual notice to his cotenant or that which is vaguely expressed by “acts equivalent thereto, as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed.” Moreover, it follows that the statute of limitations does not begin to run against a cotenant until such knowledge as claim of ownership by a cotenant is brought to the attention of a tenant not in possession, either by actual notice or the equivalent thereof.
What act or acts on the part of the defendants in the instant case amounted to an ouster of the complainant’s right to in *449 herit his prorata part of his father’s land? Was it the deed from his brothers and sisters to Earl Johnson on February 4, 1943? This date is the first time that Earl Johnson could have claimed the property because up to that time he recognized that he only had a child’s part in the land belonging to his father. This deed, however, did not attempt to convey the entire property; it expressly conveyed the interest of each grantor to the surface and retained “their mineral rights.” It is true that the deed was corrected on October 13, 1960, so as to convey the oil, gas and minerals, reserving the royalty interest of grantors. However, this deed was within the ten years next before the filing of the suit by complainant.
In Guiseppe v. Cozzani, 193 So.2d 549 (Miss.1966), we quoted from Nichols v. Gaddis & McLaurin, Inc., supra, and said:
The recording of a fee simple deed by one co-tenant as notice of his adverse claim to other co-tenants was discussed by the Court in the Nichols case, supra, in these words:
We do not think that the mere recording alone of a fee simple deed by a cotenant 'imparts notice’ to other coten-ants of an adverse claim to land by the grantee-cotenant, and do not think that 'this is as effectual for setting the statute in motion as actual notice would have been’ as was held in Pee-ples. This ignores the nature of the relationship of tenants in common, and the fact that a tenant in common out of possession is entitled to assume that a cotenant in possession holds for all cotenants, until he is given knowledge to the contrary, or the equivalent thereof, which must be shown by clear and convincing evidence. As was said in Hulvey v. Hulvey, 1895, 92 Va. 182, 23 S.E. 233, 235. 'No one is required to watch the clerk’s office to see that those in possession of property in privity with him or in subordination to his title are not acquiring rights adverse to him.’” * * * (193 So.2d at 554)
This is still the rule as pointed out in Quates, supra. The deed from complainant’s brothers and sisters to his brother, Earl Johnson, and his wife in 1943 could not have been an ouster or notice to Denver Johnstone that Earl Johnson and his wife were claiming to be the sole owners of land in which Earl Johnson did not know that Denver Johnstone had any interest.
It is contended, however, that sometime during the life of Mrs. Cora Schilling Johnson, the widow of W. F. Johnson, she wrote a letter to Denver Johnstone telling him that he was not the son of her late husband, W. F. Johnson, and not a brother to her children and asked him to stay off her land. The testimony of one of complainant’s half-sisters weakens this evidence, especially when Denver Johnstone denies the existence of such a letter. Taking this evidence at best, it is not clear when the letter was written. If it were written after Mrs. Johnson haa deeded the property to her son, she owned no interest in the property. If it were written before she gave the deed to her son, and while she lived on the property, she was entitled by law to the use and occupancy of the homestead and entitled to the income therefrom for her support (Section 478 Mississippi Code 1942 Annotated [1956]). At most, she could have only given notice as to her interest in the land. We cannot agree that the alleged letter was an ouster of the right of a son and brother to his prorata part of his father’s estate.
We have searched the record and are unable to find a time when it can be said that anything was done to bring notice to Denver Johnstone that his half-brother, Earl Johnson, was claiming Denver John-stone’s interest in their father’s land.
A disinterested representative of an oil company testified that Earl Johnson was surprised to learn that his half-brother was legally entitled to an interest in his father’s land in April 1960. Moreover, the record *450 shows that Earl Johnson and his wife called Denver Johnstone on the telephone and advised him that he had an interest in the “old home place.” They also wrote him that they would deed him an interest in the oil and minerals on the land if he would give Earl and his wife a deed to the surface of the land.
The chancellor was of the opinion that the letters and offer made on the telephone were incompetent evidence because they were made and written in an effort to compromise a claim. We hold this to be an error because these letters were clearly written in recognition of the right of Denver Johnstone to a one-ninth interest in his father’s land.
We are also of the opinion that the activity of Earl Johnson and his wife on the property was consistent with the activity usually done and performed by a coten-ant on mutually owned property. It must be remembered that Earl Johnson owned an eight-ninths interest in the land surface here involved. He had the use of the property. He changed it to pasture land and, of course, he built fences, dug ponds and straightened the creek. This sort of activity, consistent with cotenancy occupancy, was in no sense notice of adverse possession.
The facts in this case are not controlled by Reed v. Bales, supra, because in Reed, Louis B. Bales went into possession of the land under color of a deed from Mrs. Harlan at a time when Bales was a stranger to the Tom Osby title and had no interest in the land at the time he obtained the deed. Reed is in accord with our holding in Quates v. Griffin, supra. Cf. Gavin v. Hosey, supra.
We have reached the conclusion that Denver Johnstone has a one-ninth interest in the property here in dispute. We hold that he has not been ousted from his interest by acts of the appellees and that the alleged acts of adverse possession claimed by appellees were consistent with acts of a co-tenant in possession and not adverse to the right of the complainant, Denver John-stone.
The decree of the Chancery Court of Pike County, Mississippi, in this case is reversed and a judgment entered here in accordance with the above opinion.
Reversed and rendered.
GILLESPIE, P. J., and BRADY, PATTERSON and SMITH, JJ., concur.
RODGERS, Justice.
ON MOTION TO CORRECT JUDGMENT
After the original order had been entered in this case in which the Court reversed the decree of the chancery court and entered a judgment here in favor of the appellant, Denver T. Johnstone, against all of the defendants named in the original bill, it was made known to this Court by a letter filed by the Mississippi Highway Commission that the Mississippi Highway Commission had not been summoned on appeal to the Supreme Court. This Court chose to treat the letter as a motion to correct judgment and gave notice to appellant, Denver T. Johnstone, and his attorneys to make such response as they deemed necessary. Denver T. Johnstone filed his response admitting that the facts set out in the letter were correct and that the relief sought in the motion to correct judgment should be sustained so as to reverse the case and remand it to the chancery court for further proceedings upon the cross bill of the Mississippi Highway Commission.
It is apparent from the record that the Mississippi Highway Commission was not summoned as a party defendant to appear in the Supreme Court. A decree was entered in the chancery court allowing an appeal, but this decree was entered after the trial term of court, thus requiring the Mississippi Highway Commission to be summoned on appeal to the Supreme Court. The appellant, Denver T. Johnstone, proceeded to final judgment in the Supreme Court without summoning the Mississippi *451 Highway Commission as a defendant-ap-pellee. The judgment of the chancery court, as shown by its decree, dismissed the bill of complaint with prejudice. This decree was a final judgment in favor of the Mississippi Highway Commission, and since no appeal was taken from this decree, it is binding on this Court.
The former judgment of this Court must, therefore, be amended and corrected so as to strike from our judgment the Mississippi Highway Commission with reference to the right-of-way on the land here involved. Since the judgment in the trial court was in favor of the Mississippi Highway Commission, it has no right of action against the other defendants for the loss of its rights under the deed given to it by the Johnsons, and there is no necessity to reverse the case for further proceedings in the trial court.
We, therefore, correct the former judgment of this Court so as to strike from it that part of the judgment rendered against the Mississippi Highway Commission. In all other respects the former judgment is correct.
All Justices concur.